St. Joseph's Hospital Association, Respondent, vs. Ashland County and others, Appellants.

*June 12 — June 24, 1897.*

*Taxation: Exemptions: "Benevolent association."*

1. Certain of the sisters of a religious order organized a corporation without capital stock for the purpose of conducting and maintaining a hospital for the care of the sick of all classes. The articles of organization provided that no dividends or pecuniary

St. Joseph's Hospital Association vs. Ashland County and others.

profits should ever be declared to individual members, and the sisters received no compensation of any kind for their labor. When patients were able to pay, a small charge per week was made, but if they were destitute they were received and treated without pay, if there was room in the hospital. Tickets were also sold entitling the holders to admission at any time within a year. *Held,* that the corporation was a "benevolent association," within the meaning of subd. 3, sec. 1038, R. S., and its property used for hospital purposes was exempt from taxation.

2. The fact that after paying expenses and returning borrowed money there was at times a surplus which was loaned, without interest, to build other hospitals of a similar character, did not show that the property was used for pecuniary profit.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action to set aside taxes levied on the plaintiff's real estate in the city of Ashland, on the ground that it is exempt from taxation, under subd. 3, sec. 1038, R. S.

The facts were that the plaintiff is a corporation formed without capital stock by certain members of a Roman Catholic religious order called the "Handmaids of Jesus Christ." This order is widely distributed, and has hospitals in many cities of the northwest. A number of the sisters formed the corporation in or about 1884, and purchased the real estate in question (which is less than ten acres), and soon afterwards constructed a large hospital thereon, costing over $30,000, the money therefor being partly borrowed from the Provincial Mother House of the order, at Ft. Wayne, Indiana, and partly from parties in Ashland. The articles of incorporation provide that the corporation is formed "for the purpose of conducting and maintaining a hospital for the care, attendance, and medical treatment of the sick and maimed of all classes of persons consigned to its care," and that it is formed without capital stock, and that no dividends or pecuniary profits shall ever be made or declared to the individual members of the society. The sisters receive no compensation of any kind for their labors. They nurse, and

care and provide medical attendance for, the sick who are received, and mend for them, and sometimes give them clothes; and no distinction is made in the reception of patients on account of race, religion, or position in life.    When patients are able to pay, they are charged eight dollars per week, or less if they cannot pay that amount, and, if they are not able to pay anything, they are received if there is room in the hospital, and treated without pay.    Tickets are sold at seven dollars each which entitle the holder to admission at any time within one year.    A ticket holder, if taken sick, can stay at the hospital until he is well, and he will pay or not, according to his ability.    There are no means of getting money except by the sale of tickets and by the charges for care.    All the money realized over and above the actual expenses of the institution is used to pay their debts for borrowed money, or it is loaned to other hospitals owned by the order in other northwestern cities, without interest. In case one of their ticket holders is taken sick in another city where the order conducts a hospital, he can enter such hospital, and be treated, and the plaintiff corporation pays for such treatment.    It appeared that during a number of years the hospital receipts had been larger than its expenses, and the surplus had been partly used in paying its building expenses, and partly in advancing money, without interest, to aid in the erection of hospitals belonging to the order at Superior and West Superior.

Under these circumstances, the circuit court adjudged that the plaintiff's lands were exempt from taxation, and the defendants appealed.

For the appellants the cause was submitted on the brief of *George II. McCloud.* He contended, *inter alia,* that to render an institution charitable so as to exempt it from taxation, all . the proceeds must be used in conducting the one institution claimed to be exempt.    That the income, over and above that necessary to carry on the institution, is used to help

other charities, or for charitable work elsewhere, is not suffi-
cient. 25 Am. & Eng. Ency. of Law, 167; *Chapel of Good
Shepherd v. Boston*, 120 Mass. 212; *Indianapolis v. Grand
Master*, 25 Ind. 518; *American Asylum v. Phœnix Bank*, 4
Conn. 172; *Cleveland Library Asso. v. Pelton*, 36 Ohio St.
253; *Appeal of Philadelphia*, 15 Atl. Rep. 683. The words
charitable and benevolent, when used together in statutes
such as ours, are synonymous. *Bangor v. Rising Virtue
Lodge*, 73 Me. 428–433; *Saltonstall v. Sanders*, 11 Allen, 470.
The distinctive characteristics of a public charity are (1) that
its funds are derived from gifts and devises, and not from
fees, dues, and assessments; (2) that it is not confined to privi-
leged individuals, but is open to the indefinite public. *Bangor
v. Rising Virtue Lodge*, 73 Me. 428; *Att'y Gen. v. Proprietors
of Federal Street Meeting House*, 3 Gray, 1, 50; *Northampton
Co. v. Lafayette College*, 128 Pa. St. 132; *Theil College v. Mer-
cer Co.* 101 id. 530; *Fire Ins. Patrol v. Boyd*, 15 Atl. Rep. 553.

For the respondent there was a brief by *Tomkins & Mer-
rill*, and oral argument by *W. M. Tomkins*.

Winslow, J. Under subd. 3, sec. 1038, R. S., the personal
property of any "religious, scientific, literary, or *benevolent*
association, used exclusively for the purposes of such associa-
tion, *and the real property*, if not leased or not otherwise used
for pecuniary profit, necessary for the location and conven-
ience of the buildings of such association and embracing the
same, not exceeding ten acres," are exempt from taxation.
The grounds upon which the plaintiff's hospital are situated
are less than ten acres in extent, and they are not leased,
and the sole questions are whether the hospital association
is a *benevolent* association, within the meaning of the law,
and whether the evidence shows any use of the building for
pecuniary profit.

The word "benevolent" means, literally, "well-wishing."
It is a word of larger meaning than "charitable." It has

St. Joseph's Hospital Association vs. Ashland County and others.

been well said that, "though many charitable institutions are very properly called benevolent, it is impossible to say that every object of a man's benevolence is also an object of his charity." *James v. Allen*, 3 Mer. 17; *Thomson's Ex'rs v. Norris*, 20 N. J. Eq. 489. How it can be doubted that this institution is doing a benevolent work in the truest sense of the word we are unable to see. It is really the work of the good Samaritan. It is true that those who are able to pay do pay a very moderate weekly charge, but those who are unable to pay receive the same care for nothing. This does not render the work done any the less benevolent. Doubtless, if the hospital were absolutely free to all, it could not be operated. It is the very fact that pay is collected from those who can pay which enables the sisters to operate the hospital and care for those who are too poor to pay. If this work be not benevolent work, especially in the great cities and in the newly-settled districts, then there will have to be a new meaning attached to the word "benevolent." It is impossible to know how many men without home and friends owe their very lives to the care received in this and similar hospitals, when no other place opened its doors to them. We entertain no doubt that the work of this association is a benevolent work. The care of the sick and wounded of all races and religions indiscriminately, with or without pay, according to the ability of the patient, must ever be one of the most genuine forms of benevolence. It breathes the truest love for unfortunate mankind. *Philadelphia v. Women's Christian Asso.* 125 Pa. St. 572; *Hennepin Co. v. Brotherhood of Church of Gethsemane*, 27 Minn. 460.

The fact that there were surplus receipts at times, which were loaned to build other hospitals of the same character, does not show that the property was used for pecuniary profit. This is so evident that further discussion seems unnecessary.

  *By the Court.*— Judgment affirmed.