ROGERS MEMORIAL SANITARIUM, Respondent, vs. TOWN OF SUMMIT, Appellant.

*April 14—June 25, 1938.*

For the appellant there were briefs by *Dougherty, Arnold & Kivett* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondent there were briefs by *Quarles, Spence & Quarles,* attorneys, and *T. H. Spence* and *Arthur Enright* of counsel, all of Milwaukee, and oral argument by *Mr. Enright.*

The following opinion was filed May 17, 1938:

FOWLER, J.   The action is by Rogers Memorial Sanitarium, a nonstock, nonprofit corporation, against the town of Summit, to recover $897.02 of a tax of $997.02 imposed by the town upon the plaintiff as real-estate and personal-property taxes during the year 1936.   The taxes were paid under protest.   The claim for recovery is based upon the contention that the buildings, personal property, and ten acres of the land on which a sanitarium of the plaintiff is located is exempt as belonging to an institution covered by sec. 70.11 (4), Stats.   The statute exempts:

"Personal property owned by any educational institution having a regular curriculum and offering courses for at least six months in the year, or by any  .  .  .  scientific, literary, or benevolent association,  .  .  .  which is used exclusively for the purposes of such association, and the real property necessary for the location and convenience of the buildings of such institution or association and embracing the same, not exceeding ten acres; provided, such real or personal property is not leased or otherwise used for pecuniary profit.  .  .  ."

It will be observed that educational institutions covered by the statute are those having a regular · curriculum and offering courses for six months of each year.   The plaintiff

has no curriculum and offers no courses. Obviously, it is not exempt as an educational institution under the language of the statute. The statute also covers "literary" institutions, but manifestly a sanitarium is not such.

The statute also covers scientific associations and it is suggested that the plaintiff qualifies under this head. The suggestion is based upon the facts that its physicians are engaged in the treatment of its inmates, who are limited to persons afflicted with mental and nervous diseases, and in the study of their individual cases; that the knowledge thus acquired is promulgated to the medical profession; and that the plaintiff is thus engaged in furthering the science of the care and treatment of mental and nervous diseases. Plainly it is no more a scientific institution than any hospital or clinic whose physicians disclose their medical discoveries and practices to the profession generally, as physicians as a class take pride in doing. We cannot sustain this claim.

The plaintiff must therefore be a "benevolent" institution or its case falls. The claim that it is such is based upon the fact that no person makes any profit out of its operation, and a large part of its inmates receive treatment and hospitalization at less than cost, and it thereby becomes a charitable institution.

It is suggested that the articles of incorporation of the plaintiff bring it within the exemption of the statute, because it is there declared that the "purpose" of the organization of the corporation is "exclusively for benevolent, charitable and educational purposes," and the property taxed is used "exclusively for the purposes" of the corporation and "not for pecuniary profit." If this declaration were taken as controlling the plaintiff would fall under the exemption statute, but manifestly it must be judged by what it actually does rather than by its declared purposes. Besides, par. (a) of art. I recites that the "business and purpose" of the cor-

poration are "to own, operate, and manage a sanitarium for the care and treatment of nervous, mental, and other diseases, ailments, and disorders," and it would seem that this specifically declared "business and purpose" would be entitled to more weight in determining the purpose than the general declaration first quoted.

The income of the institution in 1936 was over $85,000; the excess of its receipts over operating expenses was over $20,000, excluding as an expense $12,000 paid for insurance on the life of Dr. Rogers, payable to the institution. All of the income was received from its patients except $2,209.22, all but $230 of which was made up from interest from and profits made on the sale of bonds. Of the days' service to its patients ten thousand two hundred fifteen were rendered at above cost while four thousand eighty were rendered below cost, excluding as an item of cost the life insurance premium above referred to. Only twenty-three days' service was rendered without pay. It does not appear that any of its patients were unable to pay the cost of the service rendered to them. Thus, none of its patients were entitled to or proper subjects of charity. It receives no patients as charity patients. Every patient is expected to pay for the service rendered him. No physicians or nurses servicing the patients and no person administering in any way to them donate their services. We are unable to perceive, *prima facie*, that the plaintiff is a charitable institution.

The plaintiff contends that cases heretofore decided by this court make the plaintiff a benevolent institution. The case most strongly relied on is *St. Joseph's Hospital Asso. v. Ashland County*, 96 Wis. 636, 72 N. W. 43. However, comparison of the facts of the case as stated in the opinion with the facts herein, disclose wide and controlling differences. There no one was refused admittance to the institution. The sisters operating the hospital received no compensation

for their services. They nursed and cared and provided medical attendance for the sick who were received, and mended for them and sometimes gave them clothes. If able to pay, patients paid, but if not able to pay they were cared for without pay. Pages 637, 638. That is quite a different picture from the one we have here.

*Morrison v. Henke,* 165 Wis. 166, 160 N. W. 173, is relied on. That was a malpractice case wherein it was attempted to hold the hospital liable for negligence of its nurses. It is said of that case in *Will of Prange,* 208 Wis. 404, 412, 243 N. W. 488, that "a hospital that pays no dividends and is largely supported by donations is a charitable institution." However, it appears from the printed case that the hospital was open to all persons; that nonpay as well as pay patients were received; and that the entire revenues from patients were insufficient to maintain the hospital. Such facts are not here present.

In the *Prange Case, supra,* the point involved was whether a $190,000 bequest for a hospital was exempt from inheritance tax on the ground that it was for a "charitable" purpose. The court held it was. The bequest was made on condition that $100,000 should be raised and deposited in the bank for the purpose of a hospital. The amount was raised and a corporation formed "to establish, build, construct, equip, conduct, operate and maintain . . . an institution . . . for the general treatment, care, and relief of sick, injured, suffering, infirm, or indigent persons." Its articles provided that "no dividends or pecuniary profits shall [should] be declared or paid to the members" of the corporation. There is nothing in the opinion or in the printed case to indicate the schedule of rates charged or whether patients were received if unable to pay. However, the general purpose declared in the articles of incorporation would impliedly make all sick or injured persons entitled to receipt and treatment, regardless of inability to pay, while

here the receipt of patients depends "upon [the superintend-ent] and the ability of the patient to pay." The articles of the hospital in the *Prange Case* provided for contributions from all members of the corporation, $5 per annum from general members, $25 per annum from sustaining members, and $1,000 from life members. This indicates that it was contemplated that the institution would not be supported wholly by payment from patients, and this warrants the inference that nonpaying patients would be received. We consider that this fact, plainly implied, rendered the *Prange Case* clearly distinguishable from the instant one.

It is said in the *St. Joseph's Hospital Case, supra,* that "benevolent" is a. more comprehensive term than "chari-table." In a general sense this is true. Dr. Rogers donated the hospital and its equipment to the plaintiff corporation. His gift was a benevolence. But his benevolence cannot be construed as making the hospital a benevolent institution within the meaning of the exemption statute. If so, a gift to a physician to enable him to build and equip a hospital would make the hospital a "benevolent" institution. The gift might be considered a benevolence and the giver a benevolent person, but the hospital would not qualify as a benevolent institution within the statute or within the rule of the cases cited. In the *St. Joseph's Hospital Case* the fact that persons unable to pay were received and treated the same as those able, and that the services of the sisters were rendered without compensation, were plainly the controlling facts that ruled the case. Neither of these facts is. here present.

*By the Court.*—The judgment of the circuit court is re-versed with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on June 25, 1938.