ORDER OF THE SISTERS OF ST. JOSEPH, Appellant, vs. TOWN OF PLOVER, Respondent.

*November 5—December 2, 1941.*

For the appellant there was a brief by *Fisher, Cashin &
Reinholdt,* attorneys, and *Clifford W. Peickert* of counsel, all
of Stevens Point, and oral argument by *Mr. R. T. Reinholdt*
and *Mr. Peickert.*

For the respondent there was a brief by *Atwell & Atwell*
of Stevens Point, and oral argument by *W. E. Atwell.*

FOWLER, J.   The town of Plover imposed a tax on River
Pines Sanatorium and ten acres of the ground on which it is
located against the plaintiff as owner.   The sanatorium is a
hospital limited to the care and treatment of tubercular
patients.   The plaintiff paid the tax and sued in the circuit
court to recover the payment on the ground that the property
is exempt from taxation.   The court sustained the tax.

The claim of exemption is based on sec. 70.11 (4), Stats.,
which reads:

"Personal property owned by any educational institution
having a regular curriculum and offering courses for at least
six months in the year, or by any religious, scientific, literary,
or benevolent association, . . . which is used exclusively for
the purposes of such association, and the real property neces-
sary for the location and convenience of the buildings of such
institution or association and embracing the same, not ex-
ceeding ten acres; provided, such real or personal property
is not leased or otherwise used for pecuniary profit."

The plaintiff is a religious corporation, without capital
stock, and its articles provide that no dividend or pecuniary
profit shall ever be declared or paid to its members.

Counsel for respondent rests his case upon two cases here-
tofore decided by this court, *St. Joseph's Hospital Asso. v.
Ashland County,* 96 Wis. 636, 72 N. W. 43, and *Rogers
Memorial Sanitarium v. Summit,* 228 Wis. 507, 279 N. W.
623, frankly conceding that if the case falls under the former
the plaintiff's property is exempt from taxation and if it falls

under the latter it is taxable. We shall use the standards established by these cases and determine which one to apply.

We will first state differences in the character of the institutions as the record herein and the opinion and case on file in the *Rogers Sanitarium Case* show.

While both hospitals were originally private hospitals, and a corporation was formed to take over each, and both corporations were nonstock and nondividend-declaring corporations, the sisters who formed the instant corporation and who are members of it cannot receive any compensation whatever for services in operating it, while two of the incorporators and members of the other corporation were doctors operating the hospital and the other a lawyer. Membership in the corporation consisted of the three incorporators and such persons as thereafter might be elected by the board of trustees, which was to consist of seven members. There was nothing to prevent these members from being paid for their services. Dr. Hassell was connected with the hospital before organization of the corporation. Dr. Rogers was also so connected. Dr. Rogers had received a salary of $18,000 per year under the antecedent corporation which was a stock corporation. His salary was reduced to $6,000 after the incorporation, but the corporation was to pay $12,000 per year to keep up his life insurance which was assigned to the hospital. Dr. Hassell's salary before or after does not appear, but he was medical director and director and president of the new corporation. Every person connected with the hospital was paid for his services. The whole receipts of the corporation over disbursements for maintenance could be devoted, and manifestly were in large part paid over to the doctors connected with the corporation as compensation for their services, and the amount of their compensation manifestly depended on the gross income received from patients. The charges to patients were as high as $125 per week. Obviously these patients were not objects of charity. Every patient was expected to pay.

None were received as charity patients. The superintendent of the hospital could and did choose whom he would accept as patients. Of the days' service to patients, 10,215 were paid for above cost, 4,080 below cost and only 23 without pay. We were unable to perceive any element of charity in the scheme or operation of the Rogers Sanitarium. Because of this it was considered not a benevolent institution within the meaning of the statute. The closing sentence of the opinion evidences the basis of our ruling (p. 512) :

"It is said in the *St. Joseph's Hospital Case, supra,* that 'benevolent' is a more comprehensive term than 'charitable.' In a general sense this is true. Dr. Rogers donated the hospital and its equipment to the plaintiff corporation. His gift was a benevolence. But this benevolence cannot be construed as making the hospital a benevolent institution within the meaning of the exemption statute. If so, a gift to a physician to enable him to build and equip a hospital would make the hospital a 'benevolent' institution. The gift might be considered a benevolence and the giver a benevolent person, but the hospital would not qualify as a benevolent institution within the statute or within the rule of the cases cited. In the *St. Joseph's Hospital Case* the fact that persons unable to pay were received and treated as those able, and that the services of the sisters were rendered without compensation, were plainly the controlling facts that ruled the case. Neither of these facts is here present."

The scheme and operation of the instant sanatorium is vastly different from that of the Rogers Sanitarium as appears from the following comparison likening it to the scheme and operation of the hospital involved in the *St. Joseph's Hospital Case.*

The instant hospital is conducted by a Roman Catholic religious sisterhood. No member of the sisterhood employed in any manner in its operation receives any compensation for her services. The members perform all manner of services incident to its operation except medical. All services other

than medical rendered in operating the hospital during the year involved were rendered by the sisters except the superintending nurse who was paid $130 per month and one registered nurse for a time early in the year who was paid $75 per month. All that is received above actual expenses of operation is to be used by the sisterhood in increasing the facilities of the institution or in establishing or supporting other hospitals or educational institutions. Nonpaying patients are accepted for treatment without pay and no one is rejected for inability to pay. In these respects it is like the St. Joseph's Hospital. The circumstance that exempts the plaintiff from taxation, if it is exempt, is the fact that it is a benevolent institution. That was the sole basis of the holding in the *St. Joseph's Hospital Case, supra.* The St. Joseph's Hospital at Ashland was held to be a benevolent institution, because a large part of its patients were unable to pay for their hospitalization, and it was in the broad sense a charitable institution although it exacted pay from all who were able to pay. By this standard the instant plaintiff is a charitable institution. Ninety-seven and one-half per cent of its patients are unable to pay for hospitalization. They are sent to the institution for care and treatment by the state or municipalities who are caring for them as public charges. These patients are subjects of charity. They are as much charity patients as if they applied personally for admission instead of first applying to the public authorities and being by those authorities sent to this hospital. That the public authorities pay for this care, does not avoid the fact that the patients are objects of charity, any more than the fact would be avoided if their care was paid for by the donations of private individuals as in the *St. Joseph's Hospital Case.*

It was held in a like case, *State v. H. Longstreet Taylor Foundation,* 198 Minn. 263, 269 N. W. 469, that various counties in Minnesota had been sending pauper patients to defendant institution for care and treatment and that the

counties were charged $19.50 per week for care of the paupers did not affect the hospital's status as "a purely public charity" and as a charitable institution under the exemption statutes.

As bearing upon the status of the plaintiff as a charitable institution it renders clinical service to all persons not receiving hospitalization who apply to be examined for determination whether they are afflicted with tuberculosis. It examined 1,107 such cases during the year here involved. Such applicants are charged a fixed fee for such examination if able to pay it. Eight per cent paid nothing at all; only ten per cent paid the whole of this fee; eighty-one per cent in paying what they were able to pay, paid half or less of the fee. It thus X-rayed and otherwise examined 110 out of 1,107 persons without charge, and 896 who could not pay the fixed fee for the half or less that they could pay. Another fact having some bearing on the question under consideration is that the hospital does not receive payment from the committing municipalities for its patients who are public charity patients until a year and a half after the services are rendered.

Aside from the commitment to it of public charges, the hospital is operated precisely as was the hospital at Ashland involved in the *St. Joseph's Hospital Case, supra.* It received contributions of between $6,000 and $7,000 during the year here involved. Patients not committed as public charges, who are able, pay $20 to $25 a week. Those who are unable to pay are cared for without charge. No applicant is rejected for any reason when there is room in the hospital.

The respondent's claim is to the effect that the River Pines Sanatorium should be taxed on the ground that it aims to operate at a profit. If this be so there is no hospital or school except those municipally operated that is not subject to taxation and the statute becomes practically or entirely ineffectual. For all benevolent institutions endeavor so to operate. But as the profit made by these institutions, if any, is payable to nobody, but is only turned back into improving facilities or ex-

tending the benevolence in which the institutions are primarily engaged, the profit element becomes immaterial. All schools and hospitals that come under the statute are enabled to operate at all only because they receive money in one way or another for the service they render as far as may be from the recipients of the service. And it is immaterial that in the instant case the money comes largely from municipalities who send their public charges to the institution. The instant corporation is a benevolent institution because the members who operate it are in the work of benevolence and receive and can receive no remuneration or compensation whatever for their services. Nor is it material that the state and the municipalities who send their public charges to the institution in computing the cost of maintaining these charges allow the institution to include as part of the cost a rate at which the services rendered by the members are commonly paid when performed by others than the members. That is a matter for the state and municipality to determine. The statutes, secs. 58.06 and 50.07, limit payment to actual cost. The cost per patient received by the instant corporation for the service it renders to public charges is less than the cost at which the state or municipalities or institutions that operate like hospitals operate.

We consider that the facts above stated make the work of the hospital conducted by the plaintiff Order of the Sisters of St. Joseph "a benevolent" work and bring the instant case within the rule of the *St. Joseph's Hospital Case, supra.*

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to vacate the judgment of dismissal and enter a judgment for recovery of the tax.