Prairie du Chien Sanitarium Company, Appellant, vs.
City of Prairie du Chien, Respondent.

*January 12—February 9, 1943.*

264

For the appellant there was a brief by *Graves & Earll* of Prairie du Chien, and oral argument by *J. S. Earll.*

For the respondent there was a brief by *F. J. Antoine,* city attorney, and *A. W. Kopp* of Platteville of counsel, and oral argument by *Mr. Antoine* and *Mr. MacArthur McKichan* of Platteville.

FAIRCHILD, J.   Appellant contends that under the provisions of sec 70.11 (4), Stats., its real and personal property is exempt from taxation.   This statute provides exemption for—

"Personal property owned by any . . . benevolent association . . . which is used exclusively for the purposes of such association, and the real property necessary for the location and convenience of the buildings of such . . . association and embracing the same, not exceeding ten acres; provided, such real or personal property is not leased or otherwise used for pecuniary profit. . . ."

In order for appellant's contention to be sustained it must appear that, (1) appellant is a benevolent association; (2) the personal property is used exclusively for the purposes of such association; (3) the real and personal property is not used for pecuniary profit.

What constitutes a hospital a benevolent association within the meaning of this statute has been considered in several cases and the tests to be applied have been discussed.   *Order*

*of the Sisters of St. Joseph v. Plover,* 239 Wis. 278, 1 N. W. (2d) 173; *Rogers Memorial Sanitarium v. Summit,* 228 Wis. 507, 279 N. W. 623; *St. Joseph's Hospital Asso. v. Ashland County,* 96 Wis. 636, 72 N. W. 43. It is clear that the fact that the articles of incorporation say that the institution is a benevolent and charitable one is not controlling. The actual financial setup of the hospital is important. If the books of the corporation show a substantial profit, as they did in the *Rogers Case,* this is a circumstance tending to negative the idea of a benevolent institution. The fact the hospital receives and is dependent on donations indicates a benevolent character, as does the fact that it takes all patients who apply, regardless of their ability to pay, or at least that it does take a fair number of charity patients. A final and most important test is whether the members of the corporation render services without compensation. In the case of *Order of the Sisters of St. Joseph v. Plover, supra,* the court said (p. 284) :

"The instant corporation is a benevolent institution because the members who operate it are in the work of benevolence and receive and can receive no remuneration or compensation whatever for their services."

Obviously neither a single test nor isolated answers to each of the questions posed above will automatically determine when a hospital is a benevolent association. The facts of each case must be regarded as a whole and the substance of the scheme of operation as it exists must be examined. The Prairie du Chien Sanitarium Company, Inc., for the fiscal year ending March 31, 1941, operated with a deficit of about $388, although respondent alleges this apparent deficit is due to improper bookkeeping. It received donations from the members only. That such donations from the doctors do not make a hospital a benevolent association was decided in the *Rogers Case, supra* at page 512. Here during this period the individual doctors were making from $7,500 to $10,000 a

year. The manager was paid a salary of $140 per month. Appellant alleges that it takes all patients who apply, but so far as the record shows, the ten per cent of the patients whose accounts were not collected and who were classified as neither private nor county patients were billed for regular charges and everything was done to collect these bills. It was said in *Order of the Sisters of St. Joseph v. Plover, supra,* that municipal patients were charitable patients, but the idea underlying that classification was that the benevolent character of an institution as established by its being operated by a religious order and taking all who applied for admission would not be affected by the fact that municipalities paid the costs of the care of certain patients. This leaves open the question of whether a private hospital contracting with a municipality for the care of indigents is engaged in a charitable undertaking within the meaning of the tax statutes under other circumstances.

The chief point relied on to establish the benevolent character of appellant is that the doctors in charge of the hospital were not paid any salaries for their services as medical directors of the hospital or for the operations they performed on county patients and those patients who came to the hospital without their own doctors. Whether it is exact to say that these doctors received no compensation for their services is doubtful. They got their offices in the hospital rent free as well as the use of the hospital facilities and one meal a day. Whether or not the compensation was of value equivalent to the services rendered, it is clear that there is not a complete absence of remuneration such as is found in the cases where all the work in the hospital except medical services is performed by the members of a religious order.

This leads us to the second and third points of whether the property is used exclusively for the purposes of the association and whether it is used for pecuniary profit. An association or corporation claiming to be benevolent, in order to qualify its property for exemption from taxation, must use it so free

from connection with profits accruing to those owning it as clearly to be a charitable institution. Hence the personal property, grounds, and buildings of a hospital are not exempt when members of the owner association are using the hospital as an adjunct to their private business in such a way that it becomes a source of substantial help in the matter of earnings to be derived from the practice of their profession. On this point it seems clear that even if we assume that the hospital is a benevolent association, the property is used as much to advance the individual fortunes of the surgeons who manage it as it is for charitable purposes. There can be little doubt that the hospital is maintained primarily for the greater convenience and profit of the managing doctors in the practice of their profession. The doctors may, and under their management and control of the hospital did, give without recovering pay therefor of their time and skill in caring for people who did not pay for such care, but by reason of the use of the hospital in relation to their private practice the benefits extended were those of the doctors and not a contribution to public welfare by a benevolent association. While cases from other jurisdictions are of dubious value because of the difference in the statutes involved, it can be observed that under similar circumstances other courts have refused to allow freedom from taxation by incorporating hospitals as "benevolent institutions." See *State v. Willmar Hospital*, 212 Minn. 38, 2 N. W. (2d) 564; *Bistline v. Bassett*, 47 Idaho, 66, 272 Pac. 696, 62 A. L. R. 323.

For the reasons stated above, the trial court properly held that appellant was not entitled to recover the taxes paid.

*By the Court.*—Judgment affirmed.