RIVERVIEW HOSPITAL, Respondent, vs. CITY OF TOMAHAWK, Appellant.

*September 16—October 12, 1943.*

582

*Frank E. Hebert* of Tomahawk, for the appellant.

For the respondent there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye.*

FAIRCHILD, J.   We are of the opinion that this case is ruled by *Prairie du Chien Sanitarium Co. v. Prairie du Chien* (1943), 242 Wis. 262, 7 N. W. (2d) 832, and the judgment must be reversed. .

The difference to the public between the service of an eleemosynary institution and that of a purely commercial one may at times seem somewhat insubstantial. It is to be expected that any undertaking to continue as an active institution will confer some benefit on the community in which it is to exist. So the idea of blessings conferred on patrons is not necessarily a controlling factor in determining whether a hospital can be held to be exempt from taxation as a charitable institution. As pointed out by cases reviewed and referred to in the *Prairie du Chien Case, supra,* the line of distinction in tax matters between a charitable organization and others is to be found by the light of the relation between the hospital and its actual owner. The test is its origin and the objects of its organizers, its complete dedication to charitable purposes and absolute divorce from gain to those controlling ownership. In determining whether a gift is charitable, courts are not concerned with the donor's motive beyond such light as it may throw upon his true purpose and the manner of the use to be made of the so-called charity as it relates to the donor's private business. And it is not necessary that the donee of a charitable gift be a religious corporation.

"Under constitutional and statutory provisions granting exemption with respect to property used exclusively for charitable purposes, exemption will be granted where the charitable use is exclusive, and denied where it is not. . . . Where the charitable use is not substantial, exemption will be denied, as where charitable use is merely incidental to a principal use of another character." 61 C. J. p. 459. The taxing authorities are not to be confined strictly to the phrases used in resolutions or to the terms within the four corners of the articles of organization or incorporation in making their investigation and determination as to the taxability of the property of a hospital. The courts will consider the close connection between donor and donee and the reserved power of control by the donor over the institution and its capability of enabling him to harvest

the returns flowing from the combination of the hospital and his private practice.

While the setup here is at least verbally somewhat different than in the *Prairie du Chien Case, supra,* and the organizer here has arranged to give his time to the hospital, still the surrounding circumstances showing purpose, management, and connection with private enterprise are such that the hospital is under the rule recognized in that case that "an association or corporation claiming to be benevolent, in order to qualify its property for exemption from taxation, must use it so free from connection with profits accruing to those owning it as clearly to be a charitable institution." (p. 266.) In that case it was held, as it must be here, that the property is not exempt when members of the owner organization are using the hospital as "an adjunct to their private business in such a way that it becomes a source of substantial help in the matter of earnings to be derived from the practice of their profession." (p. 267.) All that was said in the *Prairie du Chien Case* covering the use made of the hospital by its owner and his control over it appear here although respondent did not specifically grant to its owners exclusive use of the operating room and provide for meals; for there is no doubt that the hospital is conducted and managed primarily for the greater income and profit of the managing doctor in the practice of his profession. The hospital was extensively patronized as appears in the statement of facts. The evidence shows also that Dr. Henderson, due to differences arising between himself and Sacred Heart Hospital in Tomahawk, was without hospital facilities and he organized the respondent giving it the property involved. A charge is made for every patient entering the hospital and every means is used to effect collection. At the time the corporation was formed, it adopted the fees originally fixed by Dr. Henderson when operating the hospital as an individual. It does appear that all deficits of the hospital are paid by him. It also appears from the incorpora-

tion proceedings that the organization is so arranged that the power to control the property is in Dr. Henderson. The control is not given irrevocably as a charity to a charitable or benevolent institution.

We do not find it necessary to go more fully into the evidence. The benefit conferred by the organization of the hospital cannot be said to be so much to the public and so little to the donor and corporate owners as to place it in the class of property covered by sec. 70.11 (4), Stats. It is not unusual for professional men to fail in collecting a just fee for some of their effort. A profession is based on an ideal which comprehends service to mankind. While the loser may find solace in the thought that by reason of a patient's failure to pay his bill a contribution to charity has been made, the kindness granted cannot become a justification for exemption from taxation of the hospital in which the service was rendered. The conclusion of law should have been to that effect. See 144 A. L. R. 1483, 1490.

*By the Court.*—Judgment reversed, cause remanded with directions to enter judgment dismissing plaintiff's complaint.

FRITZ, J., dissents.