UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC.,Plaintiff-Appellant,†

v.

CITY OF MADISON, Defendant-Respondent,

CITY OF MIDDLETON, City of Monona, City of Verona, City of Waterloo, Village of DeForest, Village of McFarland, Village of Mt. Horeb, Village of Palmyra, and Village of Waunakee, Defendants.

Court of Appeals

*No. 02–1473.—Oral argument February 10, 2003.—Decided September 25, 2003.*

2003 WI App 204

(Also reported in 671 N.W.2d 292.)

† Petition to review denied 1-23-04.

504

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Joseph A. Pickart, Kristina E. Somers* and *David J. Hanson* of *Michael Best & Friedrich LLP*, Milwaukee. There was oral argument by *Joseph A. Pickart*.

On behalf of the defendant-respondent, the cause was submitted on the brief of and oral argument by *Robert Horowitz* of *Stafford Rosenbaum LLP*, Madison.

A nonparty brief was filed by *Robert L. Gordon* of *Weiss Berzowski Brady LLP*, for Wisconsin Association of Assessing Officers and South Eastern Wisconsin Assessors Association, *Grant Langley* and *Gregg Hagopian*, for City of Milwaukee.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. DEININGER, P.J. University of Wisconsin Medical Foundation, Inc., appeals a judgment dismissing its claim for property tax exemptions under WIS. STAT. §§ 70.11(4) and 70.11(25) (2001–02)[1] on summary judgment. Because we conclude that, on the undisputed facts of record, the medical clinics at issue do not qualify for exemption under either subsection, we affirm the appealed judgment.

## BACKGROUND

¶ 2. The Foundation is a corporation formed by the University of Wisconsin in 1995 to help improve the administration of the university's medical school. Prior to the Foundation's establishment, each medical school department operated a clinical practice at which it provided hands-on training to students, conducted research, and generated revenue for the medical school. Because each departmental clinic was relatively autonomous, however, the medical school had difficulty administering the clinical system as a whole. In 1995, the medical school elected to centralize its various

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

clinics into a single group practice operated by one corporation—the Foundation.

¶ 3. The Foundation is a non-stock, nonprofit corporation.[2] Its articles of incorporation require it to operate exclusively "for charitable, educational and scientific purposes" and prohibit it from "carrying on a trade or business for profit" and from distributing any earnings or profit for "the benefit of any private individual." An agreement between the Foundation and the university sets the following objectives for the Foundation:

> (a) market a range of primary and specialty care services to the general patient population; (b) ensure that the range of care that is offered is cost effective and well managed, such that it is competitive with the burgeoning number of highly competitive managed care organizations that exist on local, regional and national levels; and (c) successfully recruit and maintain a sufficient number of patients for the system to enable continued support of primary and specially [sic] care practitioners, and the Medical School . . . .

¶ 4. About three years after its formation, the Foundation purchased the Physicians Plus Medical Group, a for-profit group practice with a number of clinics in southern Wisconsin staffed by approximately 225 doctors and 1100 additional employees. The Foundation purchased the Physicians Plus group for $8,000,000 and employed all Physicians Plus doctors who wanted to be employed by the Foundation. The Foundation claims that it purchased the Physicians

---

[2] The Wisconsin Department of Revenue recognizes the Foundation as an exempt organization for Wisconsin sales and use tax purposes, as does the Internal Revenue Service for federal income tax purposes. *See* WIS. STAT. § 77.54(9a); *see also* I.R.C. § 501(c)(3).

Plus group to help "produce an organization capable of delivering unsurpassed patient care while supporting the teaching and research missions of the Medical School." Following its acquisition of the Physicians Plus group, the Foundation became "one of the 10 largest practice groups in the nation."

¶ 5. The Physicians Plus group included seven clinics located in Madison, Wisconsin (the "Madison clinics") over which the Foundation assumed control.[3] At all relevant times, approximately 98% of the patients treated by the Foundation at the Madison clinics paid for their treatment at prevailing market rates, using personal funds, private insurance, or government programs to pay their bills. The Foundation adjusted rates for and provided some free care to the remaining 2% of the patients treated at the Madison clinics. Although the Foundation adjusted its normal charges for these patients for a variety of reasons (e.g., the patient's death, dissatisfaction with services rendered, etc.), approximately 80% of the adjustments were related to either the patient's bankruptcy or other circumstances that rendered the fees "uncollectible."

¶ 6. The Foundation conducted research and educational activities at some of the Madison clinics. Specifically, physicians at some of the clinics occasionally conducted research studies and provided hands-on training to medical students. The record does not

_____

[3] The University of Wisconsin Medical Foundation originally commenced this lawsuit against several other municipalities (listed in the caption as "Defendants") in addition to the City of Madison. The trial court dismissed these municipalities due to the Foundation's failure to serve its refund claims upon them in the manner prescribed by WIS. STAT. §§ 74.35(2)(b)5 and 801.11(4). The Foundation does not challenge the dismissal of these parties on appeal.

511

indicate, however, the amount of time that the physicians at these clinics spent on such activities.

¶ 7. The Foundation requested that the City of Madison grant property tax exemptions for 1998 and 1999 for the Madison clinics, as well as for administrative buildings, parking facilities, and various personal property that the Foundation acquired as part of its purchase of the Physicians Plus group. The City did not grant the requested exemptions and levied property taxes of approximately $900,000 per year on these properties, which the Foundation paid.

¶ 8. In 2000, the Foundation brought an action against the City of Madison to recover the challenged property taxes. The Foundation claimed the property qualified for tax-exempt status under WIS. STAT. § 70.11(4), which exempts property "owned and used exclusively by . . . benevolent associations," and under § 70.11(25), which exempts property "used exclusively" by nonprofit organizations for purposes including medical research, education of physicians, or treatment of "deserving destitute individuals." The City moved for summary judgment on the grounds that the Foundation did not use the properties "exclusively" for exempt purposes, as these subsections require. The circuit court granted the City's motion, concluding that "the record does not support a reasonable argument" that the property was "used exclusively" for benevolent purposes or for medical research, physician education, or the treatment of destitute individuals. The Foundation appeals.

## ANALYSIS

■■■■■

¶ 9. We review a trial court's grant or denial of summary judgment de novo, owing no deference to the

trial court's decision. *Waters v. United States Fid. & Guar. Co.,* 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.,* 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995); Wis. Stat. § 802.08(2). In our review, we, like the trial court, are prohibited from deciding issues of fact; our inquiry is limited to a determination of whether a factual issue exists. *Coopman v. State Farm Fire & Cas. Co.,* 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

¶ 10. Under Wisconsin law, real and personal property are presumptively taxable. *See* Wis. Stat. § 70.109; *see also Trustees of Indiana Univ. v. Town of Rhine,* 170 Wis. 2d 293, 299, 488 N.W.2d 128 (Ct. App. 1992). Certain property, however, is exempted from tax by statute. Because tax exemption statutes "are matters of legislative grace," *id.,* they are to be "strictly construed in every instance with a presumption that the property in question is taxable, and the burden of proof is on the person who claims the exemption." Section 70.109; *see also Deutsches Land, Inc. v. City of Glendale,* 225 Wis. 2d 70, 80–81, 591 N.W.2d 583 (1999).

¶ 11. This presumption in favor of taxability is motivated by "the public interest to stem the erosion of municipal tax bases." *International Found. of Employee Benefit Plans, Inc. v. City of Brookfield,* 95 Wis. 2d 444, 454, 290 N.W.2d 720 (Ct. App. 1980), *aff'd,* 100 Wis. 2d 66, 301 N.W.2d 175 (1981). As we explained in *International Foundation,*

[t]he more exceptions allowed, the more inequitable becomes the apportionment of the tax burden. The continuous removal of real property from taxation thus imposes a particular hardship upon local government and the citizen taxpayer.

Accordingly, the legislature mandated that only certain institutions are relieved of their normal tax load. *See generally* [Wis. Stat. §] 70.11 . . . . The legislature has recognized that some organizations actually serve a public rather than a private purpose and should be relieved of their tax burden.

*Id.* Put another way, specific and limited property tax exemptions are based on a theory of mutual consideration: the public relieves an organization of its property tax burden when it provides a public benefit. *See id.* at 455 (noting that, generally, organizations are relieved of their tax burden when they "provide a benefit to the taxpaying community").

¶ 12. To be relieved of its property tax burden for the property in question, the Foundation " 'has the burden of showing the property is clearly within the terms' " of one of the exemptions it asserts. *Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 811, 440 N.W.2d 329 (1989) (citation omitted). The Foundation advances two principal arguments. The first is that genuine issues of material fact regarding whether the properties were "used exclusively" for exempt purposes under either Wis. Stat. § 70.11(4) ("property owned and used exclusively by . . . benevolent associations") or § 70.11(25) (applicable to "nonprofit medical research foundations") preclude dismissal of its claim on summary judgment. The second is that in

evaluating the use of the property, we must apply the "reasonably necessary" doctrine. We reject both contentions.

I.

██

¶ 13. We first consider whether, as the Foundation asserts, it may qualify for one or both exemptions if its use of the acquired clinic properties is "reasonably necessary" to support an exempt use.

¶ 14. The supreme court has held that the "exclusive use" requirement of a different exemption, that provided in Wis. Stat. § 70.11(4m) for nonprofit hospitals,[4] is satisfied if the use of the claimed exempt property is "reasonably necessary" to the functioning of a hospital. The court held in *Columbia Hospital Ass'n, Inc. v. City of Milwaukee*, 35 Wis. 2d 660, 151 N.W.2d 750 (1967), that residential property a nonprofit hospital owned and rented to medical personnel qualified for an exemption under § 70.11(4m) because it was reasonably necessary for the hospital to offer conveniently located and inexpensive rental property to certain members of its medical staff. *Id.* at 673–74. Similarly, in *Sisters of Saint Mary v. City of Madison*, 89 Wis. 2d 372, 278 N.W.2d 814 (1979), the court held that a single family residence that a nonprofit hospital owned and provided to its chaplain qualified for an exemption under § 70.11(4m) because it was reasonably necessary

---

[4] The exemption authorized in Wis. Stat. § 70.11(4m) is for "[r]eal property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by" a nonprofit corporation.

515

for the hospital to have a priest located near the hospital to serve the spiritual needs of its patients and staff. *Id.* at 383–84.

¶ 15. The Foundation argues that the reasonably necessary standard developed under WIS. STAT. § 70.11(4m) should apply as well to determining whether the "exclusive use" requirements of § 70.11(4) and (25) have been met. Specifically, it contends that the Madison clinics and associated property qualify for exemption under both subsections because the properties are reasonably necessary for the Foundation's benevolent activities and for the medical education, research, and care for the destitute that it conducts or provides.

¶ 16. We decline to extend the "reasonably necessary" standard developed under WIS. STAT. § 70.11(4m) to subsections (4) and (25) for two reasons. First, the two cases the Foundation cites in support of its present argument, *Columbia Hospital* and *Sisters of Saint Mary*, give no indication that the supreme court believed the "reasonably necessary" standard under § 70.11(4m) should apply to any subsections of § 70.11 other than (4m). To the contrary, the court noted in *Columbia Hospital* that the hospital was not seeking an exemption "under sec. 70.11(4) as a benevolent institution," and that the only issue before it was "whether the properties involved are used exclusively for the purposes of the hospital within the meaning of sec. 70.11(4m)." *Columbia Hospital*, 35 Wis. 2d at 665. Later in the opinion, the court explained that "Sec. 70.11(4m) was created in 1957 solely to apply to hospitals and its language is much broader than that used in the older exemption statutes applicable to charitable and benevolent institutions." *Id.* at 669. The court reiterated the point in *Sisters of Saint Mary*, 89 Wis. 2d at 380, and it

referred to the "reasonably necessary" test adopted in *Columbia Hospital* as "the test for tax exemption *under sec. 70.11(4m)*," *id.* at 382 (emphasis added).

¶ 17. Second, in its most recent interpretation of the "exclusive use" requirement under the Wis. Stat. § 70.11(4) for property owned by "benevolent associations," the supreme court made no mention whatsoever of the "reasonably necessary" standard it had applied in *Columbia Hospital* and *Sisters of Saint Mary* to the exemption for nonprofit hospitals under subsection (4m). *See Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 591 N.W.2d 583 (1999). The latter case was not cited at all in *Deutsches Land*, and the court cited *Columbia Hospital* only for standard of review purposes, *id.* at 80, and for the proposition that " 'used exclusively' did not preclude 'inconsequential or incidental uses of the property for gain,' " *id.* at 83 (citation omitted). We view the absence of any mention of the "reasonably necessary" test in *Deutsches Land* as effectively precluding our applying it in resolving the Foundation's subsection (4) claim in this case, and as a persuasive indication that the test has no relevance to subsections other than (4m).

II.

■

¶ 18. We next consider whether the Foundation's claim for exemption of its acquired clinics under Wis. Stat. § 70.11(4) was correctly dismissed on summary judgment. Subsection (4) authorizes a property tax exemption for "[p]roperty owned and used exclusively

by . . . benevolent associations."[5] The supreme court has explained that ·in order "to qualify for a total exemption under WIS. STAT. § 70.11(4), an organization must show three facts: (1) that it is a benevolent organization, (2) that it owns and exclusively uses the property, and (3) that it uses the property for exempt purposes." *Deutsches Land*, 225 Wis. 2d at 81–82.

■■■

¶ 19. The City does not dispute that the Foundation is a benevolent organization or that it owns the properties in question. As the supreme court emphasized in *Deutsches Land*, however, "[b]enevolent ownership of property is not enough to satisfy the dictates of WIS. STAT. § 70.11(4); benevolent use of that property is also required." *Id.* at 85. The disposition of the Foundation's claim for exemption under WIS. STAT. § 70.11(4) thus turns on whether the Foundation established in the summary judgment record that it used the acquired clinics "exclusively" for "benevolent" activities, or at a minimum, that a factual dispute exists as to whether its use so qualifies. *See Transportation Ins. Co., Inc. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 291–92, 507 N.W.2d 136 (Ct. App. 1993) ("[O]nce sufficient time for discovery has passed, it is the burden of the party asserting a claim on which it bears the burden of proof at trial 'to make a showing sufficient to establish the existence of an element essential to that party's case.' " (citation omitted)).

---

[5] WISCONSIN STAT. § 70.11(4) requires that the claimed exempt property must not exceed ten acres of land "necessary for location and convenience of buildings." Neither party presents an argument· regarding the acreage limitation or whether the land involved was necessary for the location and convenience of the Foundation's buildings.

¶ 20. The "exclusive use" requirement under Wis. Stat. § 70.11(4) does not mean that, in order to qualify for exemption under that subsection, a property must be solely or entirely used for benevolent activities. *Deutsches Land,* 225 Wis. 2d at 83. Some use that is " 'incidental to and promotive of the main purpose' " of the benevolent activities to which a specific property is " 'primarily devoted' " will not necessarily disqualify the property. *Id.* at 83–84 (citation omitted). Accordingly, the relevant question often becomes: "How consequential was the questionable activity when compared to the total activity on the property?" *Id.* at 84. The inquiry is thus a fact-specific one, to be answered case-by-case, with the property owner bearing the burden of showing how its property is "actually used" and that its actual use is exempt use. *Id.* at 84–85.

¶ 21. "Benevolent" activities are defined as those that benefit the public and, "to some extent at least, relieve the state from expense." *Methodist Episcopal Church Baraca Club v. City of Madison,* 167 Wis. 207, 210, 167 N.W. 258 (1918). The Foundation argues that it primarily uses the acquired clinics for benevolent purposes because it provides "patient care, research, and education" at the clinics "that make the recipients better members of society by improving their physical and mental condition." The Foundation couples this argument with a citation to case law holding that a benevolent organization may charge a fee for its services and may make a profit, so long as the profit is not distributed to shareholders or other individuals as a return on investment, a requirement that, as a nonprofit corporation, the Foundation meets. *See Milwau-*

*kee Protestant Home for the Aged v. City of Milwaukee,*
41 Wis. 2d 284, 164 N.W.2d 289 (1969).

¶ 22. A major flaw in the Foundation's argument
stems from the fact that the case on which in princi-
pally relies, *Milwaukee Protestant Home,* did not decide
whether the activity there under review (operating a
retirement home whose residents paid occupancy
charges and a founder's fee) constituted a benevolent
use within the meaning of Wis. Stat. § 70.11(4). In fact,
the court plainly disavowed such an inquiry:

> [T]he question before us is not whether operating a
> retirement home for the aged is a proper function of a
> benevolent institution. The legislature has answered
> that. The sole question here is whether the Milwaukee
> Protestant Home for the Aged meets the standards as
> to nonprofit operation set forth in the tax exemption
> statute.

*Id.* at 293.[6] The main focus of the court's attention was
thus on whether the property in question was, in whole
or in part, "being operated 'for pecuniary profit,' " *id.* at
295, and the analysis on which the Foundation seeks to
rely was directed to that question and not to whether
the property was being put to a benevolent use.

¶ 23. Thus, while we agree that *Milwaukee Prot-
estant Home* stands for the proposition that charging
fees for services does not render a benevolent use of

---

[6] The court noted in *Milwaukee Protestant Home for the
Aged v. City of Milwaukee,* 41 Wis. 2d 284, 292–93, 164 N.W.2d
289 (1969), that the legislature had settled the public policy
question of whether operation of a retirement home for the aged
was a benevolent use of property by amending Wis. Stat.
§ 70.11(4) in 1967 "to specifically add 'benevolent nursing homes
and retirement homes for the aged' as included in the tax
exemption statute." The quoted language remains in the
present § 70.11(4).

property ineligible for exemption under Wis. Stat. § 70.11(4),[7] the case is of no assistance in determining whether a given use is "benevolent." In fact, the court emphasized in *Milwaukee Protestant Home* that, "[u]nder the statute as written, it is the basic nature of the institution and the dominant purpose of the operation [that] controls," *id.* at 300–01, which is consistent with the court's approach thirty years later in *Deutches Land*, when it directed its focus to " 'the main purpose for which a building is primarily devoted,' " *Deutches Land*, 225 Wis. 2d at 83 (citation omitted).

¶ 24. Accordingly, in order to determine whether the Foundation "exclusively used" its acquired Madison clinics for benevolent purposes, we examine the summary judgment record to determine whether "the main purpose" to which the clinics are devoted can be definitively ascertained, or whether, as the Foundation asserts, it has submitted sufficient evidentiary materials to place the question in dispute. The supreme court has long held that "neither a single test nor isolated answers" to inquiries concerning an organization's operations "will automatically determine" when an organization is engaged in a benevolent activity. *Prairie du Chien Sanitarium Co. v. City of Prairie du Chien*, 242 Wis. 262, 265, 7 N.W.2d 832 (1943). Rather, "[t]he facts of each case must be regarded as a whole and the substance of the scheme of operation as it exists must be examined." *Id.* With this broad test in mind, we

---

[7] *See Milwaukee Protestant Home*, 41 Wis. 2d at 295–303 (noting, among other things, that "the word 'benevolent' has no in-built implication or requirement of almsgiving"; that "[c]harging pew rent does not make a church not a church"; and that if the legislature had intended to impose a requirement for free services "to all or some of the residents" it would have so provided).

examine the undisputed facts of record concerning the Foundation's use of the Madison clinics.

¶ 25. We look first at the patient care that the Foundation provided at the Madison clinics during the tax years in question. Because there can be no dispute that the Foundation primarily used the clinics to provide outpatient medical care, the sole issue is whether this activity was "benevolent" in nature. We note at the outset that we reject the Foundation's suggestion that all provision of medical care is "benevolent" because it makes the recipients "better members of society by improving their physical and mental condition." By that standard, many enterprises would qualify as "benevolent." Spas, restaurants, and yacht clubs all arguably make individuals better members of society by improving their physical and mental condition, but we seriously doubt that such enterprises, even if owned and operated by nonprofit entities, could reasonably hope to obtain an exemption from property taxes under WIS. STAT. § 70.11(4). *See Riverview Hosp. v. City of Tomahawk*, 243 Wis. 581, 584, 11 N.W.2d 188 (1943) ("[T]he idea of blessings conferred on patrons is not necessarily a controlling factor in determining whether [an organization] can be held to be exempt from taxation . . . .").[8]

¶ 26. Even though we conclude that the provision of outpatient medical care, per se, is not a "benevolent"

---

[8] Additional indication that the legislature does not deem the provision of outpatient medical care, per se, to be a "benevolent" use (unlike the operation of "retirement homes for the aged") can be inferred from the absence of any language in WIS. STAT. § 70.11(4) so suggesting. In fact, the legislature has chosen to exclude from exemption under § 70.11(4m)(a) (applicable to nonprofit hospitals) any "property used for commercial purposes . . . [such] as a doctor's office."

use, providing such care free or at greatly reduced cost to the poor might well be. The undisputed facts, however, indicate that the Foundation priced its services at prevailing market rates. Additionally, the Foundation advertised extensively to attract patients to the Madison clinics, as evidenced by its "two-pronged campaign" following its purchase of the Physicians Plus group that included "two 60 second television commercials combined with print ads" that were designed to "help[] consumers better recognize the merger of our two physician groups." Finally, approximately 98% of the patients whom the Foundation treated at the Madison clinics paid for their treatment either with personal funds or through private insurers or government programs. Although the Foundation reduced or wrote-off its charges for the remaining two percent of clinic patients, approximately 80% of these adjusted charges were either discharged in bankruptcy proceedings or were "uncollectible," a category that the Foundation uses to "write off balances determined by [a] collection agency to be outlawed or too small to turn over to [the] collection agency."[9]

---

[9] Although the Foundation notes that its bylaws require it to provide medical care to patients "without regard to . . . ability to pay for services," Wisconsin courts have long held that " 'a corporation's declared objects are not controlling in determining whether its property is exempt.' " *Frank Lloyd Wright Found. v. Town of Wyoming*, 267 Wis. 599, 605, 66 N.W.2d 642 (1954) (citation omitted). Rather, the " 'primary or actual use made of the property, that is, the activities actually carried on,' " is the conclusive factor. *Id.* (citation omitted). Given that 98% of the Foundation's patients at the Madison clinics paid market rates for their care, we assign little significance to the Foundation's stated intention in its bylaws to provide free or greatly discounted medical care to those in need.

¶ 27. Thus, on the record before us, it is difficult to distinguish the Foundation's provision of patient care at its acquired clinics during the tax years in question from that offered by a for-profit medical provider, such as the clinics' previous owner. The Foundation charged market rates for its services, advertised extensively to promote them, and typically forbore collecting for its services only when accounts were deemed uncollectible. As the supreme court has noted,

> [i]t is not unusual for professional men to fail in collecting a just fee for some of their effort . . . . While the loser may find solace in the thought that by reason of a patient's failure to pay his bill a contribution to charity has been made, the kindness granted cannot become a justification for exemption from taxation . . . .

*Riverview Hospital*, 243 Wis. at 586. We conclude that the outpatient care provided at the Foundation's acquired clinics, the purpose to which the properties were primarily devoted, was not a benevolent activity within the meaning of WIS. STAT. § 70.11(4).

¶ 28. Our conclusion finds support in our decision in *St. Clare Hospital of Monroe, Wisconsin, Inc. v. City of Monroe*, 209 Wis. 2d 364, 563 N.W.2d 170 (Ct. App. 1997). In *St. Clare Hospital*, a nonprofit hospital purchased a for-profit medical clinic which had a staff of doctors who saw patients by appointment on an outpatient basis during regular business hours. *Id.* at 366,

---

Likewise, we assign little weight to the Foundation's argument that its "benevolent activities include . . . patient care . . . that would otherwise have to be provided at government expense." Given the negligible percentage of the Foundation's patients who were unable to pay for their care, there is scant support for the proposition that, but for the Foundation, the government would have been burdened with significant additional expense.

373–74. The hospital claimed that the clinic fell within the property tax exemption granted by WIS. STAT. § 70.11(4m)(a), which allows an exemption for "real property owned and used . . . exclusively" by nonprofit hospitals for "the diagnosis, treatment or care of the sick." We denied the exemption, however, because § 70.11(4m)(a) also provides that "[t]his exemption does not apply to property used for commercial purposes, . . . [such] as a doctor's office." (See footnote 8.)

¶ 29. Although the hospital argued that its purchase of the clinic brought the clinic property within the scope of the subsection (4m) exemption for nonprofit hospitals, we held that the hospital's purchase of the clinic "[did] not change the fundamental use of the [clinic] from that of a doctor's office to something else." *Id.* at 375. The same rationale applies here. The Foundation's purchase of the Physician's Plus group did not convert the fundamental use of the Madison clinics into benevolent activities meriting a tax exemption under WIS. STAT. § 70.11(4). As we concluded in *St. Clare Hospital* with respect to the claim under subsection (4m), the Foundation must show more than simply a change in ownership of the clinics in order to qualify them as property used exclusively for benevolent activities under subsection (4). On the record before us, the Foundation has failed to do so.

¶ 30. We turn next to the research and educational activities that the Foundation asserts it conducted at the Madison clinics during the tax years in question. Assuming without deciding that medical research and education are benevolent activities within the meaning of WIS. STAT. § 70.11(4), the summary judgment record evinces no dispute that the clinics were not "primarily devoted" to research and educational activities. The record contains no documentation

or testimony that would establish the amount of time or space the Foundation devoted to these activities within the clinics, as compared to the time and space devoted to the provision of outpatient medical care.

■■

¶ 31. As the supreme court explained in *Deutsches Land*, 225 Wis. 2d at 85, a property owner must "detail its use of the property so that tax assessors know what type of activities, if any, are occurring on the property." Moreover, "unsupported opinion testimony" and "generalized assertions" about the purportedly benevolent use will not suffice. *Id.* at 87. Indeed, the supreme court recommends that the property owner introduce documentation of the extent of its purportedly benevolent use of the property. *See id.* Here, no such documentation exists in the summary judgment record, nor is there even anecdotal evidence indicating the amount of medical research or education that occurred at each of the clinics in question.[10] We thus conclude that the Foundation has failed to meet its burden to establish or place in dispute that its actual use of the clinics for medical research and education constituted the primary activities conducted at its acquired clinics.[11]

---

[10] A Foundation representative conceded at deposition that, to his knowledge, medical research occurred in only two of the seven clinics and medical training occurred in only five of them. He gave no indication, however, of the amount of staff time or clinic space that was devoted to these activities.

[11] We are also unpersuaded by the Foundation's assertions that the Madison clinics, as a whole, help to provide a large patient pool to support the research activities it conducts or funds, and that the Foundation as a whole contributes substantial funds to the university's medical school. Even if the Foundation can establish that the outpatient medical care it provides

¶ 32. Thus, on the record before us, there is only one reasonable inference—that the Foundation did not "exclusively use" the Madison clinics for benevolent purposes, as is required by WIS. STAT. § 70.11(4). Additionally, we note that the Foundation offers no evidence that would cause us to reach a different conclusion concerning the administrative buildings, parking facilities, and personal property for which it also seeks an exemption. *Cf. Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶ 48, 246 Wis. 2d 933, 632 N.W.2d 59, *aff'd*, 2002 WI 80, 254 Wis. 2d 77, 646 N.W.2d 777 (noting that a summary judgment opponent may not rely on conjecture and that the "opponent's obligation is to counter with evidentiary materials demonstrating there is a dispute"). Accordingly, we conclude that the City is entitled to summary judgment on the Foundation's claim under § 70.11(4).

### III.

¶ 33. We turn to the Foundation's argument that it is eligible for a tax exemption under WIS. STAT. § 70.11(25). Subsection (25) provides a tax exemption for property "used exclusively" by nonprofit organizations "for the purposes of: medical and surgical research . . . [or] promoting education . . . which bear[s] on medicine and surgery . . . [or] providing . . . treatment for deserving destitute individuals not eligible for assistance from charitable or governmental institutions." As with the Foundation's claimed exemption

at the acquired clinics is helpful, either financially or in other ways, in supporting the benevolent activities it conducts elsewhere, that fact does not bear on the issue of the primary use to which the Foundation put its Madison clinics during the tax years in question.

under § 70.11(4), the applicability of § 70.11(25) hinges on the meaning of the "exclusive use" requirement.

¶ 34. The parties do not cite (and we have not located) any case interpreting the "exclusive use" language for purposes of WIS. STAT. § 70.11(25). The City argues that we should interpret the language in subsection (25) consistent with the *Deutsches Land* interpretation of the same phrase in § 70.11(4), as we have applied it above. The Foundation argues, on the other hand, that we should interpret the language consistent with the arguably broader interpretation of the phrase in case law applying § 70.11(4m) to property owned by nonprofit hospitals. We reject, for the reasons we have discussed above (see ¶¶ 16 and 17), the invitation to export the "reasonably necessary" standard to subsections other than (4m). Rather, we conclude that our inquiry under subsection (25) must focus on the "main purpose for which [the clinics are] primarily devoted" to determine if they qualify for exemption under that subsection. *Deutsches Land*, 225 Wis. 2d at 83.

¶ 35. Thus, in order for its claim under WIS. STAT. § 70.11(25) to survive summary judgment, the Foundation must establish in the summary judgment record that there is, at a minimum, a factual dispute that the main purpose to which the Madison clinics were primarily devoted was one or more of the following: medical research, physician education, or care for destitute individuals. As we have described above, however, the undisputed facts of record indicate otherwise—that the primary activity at the clinics during the years in question was the provision of outpatient medical care in return for market-rate compensation for that care.

Accordingly, we conclude that the City is also entitled to summary judgment on the Foundation's claim under § 70.11(25).[12]

## CONCLUSION

¶ 36. For the reasons discussed above, we affirm the appealed judgment.

---

[12] The Foundation claims that support for exempting its acquired clinics under WIS. STAT. § 70.11(25) may be found in internal Department of Revenue memoranda that conclude certain clinics of a different medical provider are exempt under subsection (25). We are not persuaded that the memoranda are helpful in resolving the present dispute. They pertain to clinics of a different medical provider operating under a distinct set of facts that are not of record. Moreover, even if the memoranda spoke to the facts at issue here, they are of course not binding on us or apparently on the City's assessor. (One of the memoranda recites that the "municipalities were free to exempt the properties or not and to litigate the issue.")

We also note that the Foundation suggests that it may have a "uniformity clause" claim under the Wisconsin Constitution. The Foundation asserts in its opening brief that, during the relevant tax years, "several municipalities in Wisconsin exempted from property taxation the same class of property at issue in this case," and thus "the City's failure to exempt the [property at issue] from property taxation violates the rule of uniformity of taxation provided in art. VIII, § 1 of the Wisconsin Constitution (the 'Uniformity Clause')." In its reply brief, the Foundation explains that any claim under the uniformity clause must await trial, where the nature of its activities "would be properly clarified." Neither the record nor the briefs before us develops the uniformity clause issue and we therefore decline to address it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that we may decline to review issues inadequately briefed).

*By the Court.*—Judgment affirmed.