SAINT JOSEPH'S HOSPITAL OF MARSHFIELD, INC.,
Plaintiff-Appellant,

v.

CITY OF MARSHFIELD, Defendant-Respondent.†

Court of Appeals

*No. 03–1006. Oral argument November 24, 2003.—Decided
September 2, 2004.*

2004 WI App 187

(Also reported in 688 N.W.2d 658.)

† Petition to review denied 11-18-2004.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David J. Edquist* and *Susan E. Lovern* of *von Briesen & Roper, S.C.*, Milwaukee. There was oral argument by *David J. Edquist*.

On behalf of the defendant-respondent, the cause was submitted on the brief of and oral argument by *John Hutchinson* of *Stauber, Juncer, Wolfgram & Gamoke, S.C.*, Marshfield.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J. This case involves a property tax exemption dispute between the City of Marshfield and St. Joseph's Hospital. The Hospital owns a child care facility used primarily by Hospital employees and employees of Marshfield Clinic. The City denied the Hospital's request for property tax-exempt status for the child care center. The Hospital sought judicial review, and the circuit court granted summary judgment in favor of the City. The Hospital appeals. We reverse the circuit court and remand for further proceedings.

## Background

¶ 2. St. Joseph's Hospital is a non-profit corporation. The buildings in which the Hospital operates as a hospital are property tax exempt under WIS. STAT. § 70.11(4m)(a) (2001–02).[1]

¶ 3. The Hospital is closely associated with Marshfield Clinic. The Clinic is a non-profit organization adjacent to and physically connected to the Hospital. The Clinic property is treated by the City as property tax exempt under WIS. STAT. § 70.11(25) as a nonprofit medical research foundation. With two exceptions, the physician staff of the Hospital is comprised of Marshfield Clinic physicians. At least some other Clinic employees directly or indirectly serve Hospital patients.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 4. The Hospital and Marshfield Clinic separately provided in-building child care facilities to their employees prior to 1999. In 1999, the Hospital constructed a stand-alone building to house its child care center. The disputed child care center property is located adjacent to and near some Hospital and Clinic employee parking, a couple of blocks from the Hospital and Clinic buildings.

¶ 5. The child care center is available to Marshfield Clinic employees through an agreement between the Hospital and the Clinic. Space allocation in the child care center includes the following: 49% for the children of Hospital employees and 49% for the children of Marshfield Clinic employees. Marshfield Clinic contributed 49% of the construction cost of the child care center and contributes 49% to the amount needed to supplement the center's yearly operating budget.

¶ 6. The Hospital employs a private company, Bright Horizons, to operate the child care center. Five percent of the spaces in the child care center are reserved for the children of Bright Horizons employees who work at the center.

¶ 7. In 1999, the Hospital asked the City to declare the child care center fully property tax exempt. The City denied the request and classified the center as 98% taxable.[2] For tax years 2000 and 2001, the City of Marshfield assessed the Hospital property tax on 98%

---

[2] The City agrees that 2% of the facility, attributable to a "Healthy Birth Program," is tax exempt. Accordingly, we address only the remaining 98%. The composition of this 98%, however, is puzzling. The record and the parties' briefs seemingly inform us that this 98% is comprised of 49% for Hospital employees, 49% for Clinic employees, and 5% for Bright Horizons employees. The parties have not explained why these percentages do not add up to 98%.

of the value of the Hospital's child care center property. The Hospital paid the tax bills, but contested them. The City denied the Hospital's claim for recovery. The Hospital challenged the assessment in circuit court pursuant to WIS. STAT. § 74.35(3)(d).

¶ 8. The Hospital and the City submitted affidavits and a stipulation of facts. Both parties moved for summary judgment. The circuit court denied the Hospital's motion and granted summary judgment in favor of the City. The court concluded that the Hospital's child care center property was 98% taxable. The circuit court reasoned that the Hospital had the burden of demonstrating that it was providing a benefit to employees not available from other nearby child care facilities. The court concluded that the Hospital's child care center is "not 'reasonably necessary' since the same services are already available in the community [within] a reasonable proximity of the Hospital."

### *Discussion*

¶ 9. In the context of summary judgment, the circuit court concluded that the disputed portion of the Hospital's child care center was not entitled to tax-exempt status under WIS. STAT. § 70.11(4m)(a) for tax years 2000 and 2001. We review summary judgment *de novo,* applying the same standard as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). When deciding whether there are genuine issues of material fact, we view the evidence, and the reasonable inferences from that evidence, most favorably to the opposing party. *Kraemer*

*Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 566–67, 278 N.W.2d 857 (1979).

¶ 10. We recently addressed property tax exemptions in *University of Wisconsin Medical Foundation, Inc. v. City of Madison*, 2003 WI App 204, 267 Wis. 2d 504, 671 N.W.2d 292, *review denied*, 2004 WI 20, 269 Wis. 2d 198, 675 N.W.2d 804 (Jan. 23, 2004) (No. 02–1473). We explained:

> Under Wisconsin law, real and personal property are presumptively taxable. Certain property, however, is exempted from tax by statute. Because tax exemption statutes "are matters of legislative grace," they are to be "strictly construed in every instance with a presumption that the property in question is taxable, and the burden of proof is on the person who claims the exemption."

*UW Medical Foundation*, 267 Wis. 2d 504, ¶ 10 (citations omitted); *see also Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI 150, ¶ 14, 267 Wis. 2d 158, 672 N.W.2d 275.

¶ 11. The question here is whether a non-profit hospital's child care facility is exempt from property tax under WIS. STAT. § 70.11(4m)(a). Our interpretation of this statute "must take into account its clear legislative purpose, namely, to provide a benefit to nonprofit hospitals engaged in the care of the sick." *Sisters of St. Mary v. City of Madison*, 89 Wis. 2d 372, 380, 278 N.W.2d 814 (1979). Section 70.11(4m)(a) reads, in pertinent part:

> NONPROFIT HOSPITALS. (a) Real property owned and used and personal property used exclusively for the

purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled . . . .[3]

Thus, the question here is whether all or part of the disputed 98% of the Hospital's child care center is "used exclusively" for purposes of the Hospital within the meaning of § 70.11(4m)(a).

¶ 12. The statutory phrase "used exclusively" was construed in *Columbia Hospital Ass'n v. City of Milwaukee*, 35 Wis. 2d 660, 151 N.W.2d 750 (1967). In *Columbia Hospital*, the supreme court adopted the "reasonably necessary" test as a framework for analyzing whether

---

[3] The full text of WIS. STAT. § 70.11(4m)(a) reads:

**70.11 Property exempted from taxation.** . . .

. . . .

(4m) NONPROFIT HOSPITALS. (a) Real property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, except an organization that is organized under s. 185.981 or ch. 611, 613 or 614 and that offers a health maintenance organization as defined in s. 609.01(2) or a limited service health organization as defined in s. 609.01(3) or an organization that is issued a certificate of authority under ch. 618 and that offers a health maintenance organization or a limited service health organization, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. This exemption does not apply to property used for commercial purposes, as a health and fitness center or as a doctor's office. The exemption for residential property shall be limited to dormitories of 12 or more units which house student nurses enrolled in a state accredited school of nursing affiliated with the hospital.

property is "used exclusively" within the meaning of the statute. Under the "reasonably necessary" test, property need not be indispensable to the efficient functioning of a hospital. *Id.* at 670–71.

> The section has carefully expressed the exemption in terms of a hospital whose primary purpose is diagnosis, treatment and care and this contemplates that a hospital may have other functions and objects, whether they be directly or indirectly associated with the care of the sick. The language of the section refers to property used exclusively for the purposes of the hospital. *This means any and all purposes, not just for the primary purpose of care, diagnosis or treatment.*

*Id.* at 668 (emphasis added). Moreover, the facility need not solely benefit the hospital:

> Under this doctrine, even though there is some incidental benefit to the occupants of residential properties, such benefit does not require that the property be nonexempt when the providing of such housing is for the greater benefit of the hospital.

*Id.* at 671. Rather, courts are to assess whether the property and its use are a " 'reasonable necessity to the efficient functioning of the hospital as an organization.' " *Id.* at 670–71 (relying on *Cedars of Lebanon Hosp. v. Los Angeles County*, 221 P.2d 31 (Cal. 1950)).

¶ 13. In *St. Elizabeth Hospital, Inc. v. City of Appleton*, 141 Wis. 2d 787, 416 N.W.2d 620 (Ct. App. 1987), we provided additional guidance:

> [T]he language of the statute referring to property used exclusively for the purpose of the hospital means "any and all purposes." Furthermore, it is for the hospital management, not the reviewing court, to determine the purpose of the hospital. Whether the means are reasonably necessary to attain those purposes is the question open to our determination.

*Id.* at 792 (citation omitted).

¶ 14. We glean from these authorities the following standard: to qualify as property tax exempt under WIS. STAT. § 70.11(4m)(a), the use of the property in question must be reasonably necessary to the efficient functioning of the hospital as an organization in light of the hospital's tax-exempt purposes, namely, the diagnosis, treatment, and care of patients.

*Whether the "Reasonably Necessary" Test Includes Consideration of Alternatives*

¶ 15. The Hospital and the City dispute whether analysis under WIS. STAT. § 70.11(4m)(a) should include a comparison of the Hospital's child care center with alternative nearby child care facilities. The City states: "The single issue is whether the Hospital's decision to operate its own custodial day care facility—even though equivalent facilities are fully available in Marshfield—is reasonably necessary to further the specific purpose of delivering health care services." Indeed, much of the argument by both the Hospital and the City in the circuit court and before this court focuses on whether the Hospital's child care center provides advantages to Hospital and Clinic employees—and by extension to the Hospital itself—not available at other child care centers near the Hospital and Clinic.

¶ 16. An inquiry into alternatives seems intuitively correct. After all, what need is there to grant tax-exempt status to a facility that simply competes with taxpaying facilities and provides no added benefit to the Hospital functions that underpin its tax-exempt

584

status? Thus, it is difficult to fault the parties and the circuit court for focusing attention on comparisons with alternative child care facilities. However, our review of the two supreme court cases on this topic persuades us that a hospital seeking tax-exempt status for property under WIS. STAT. § 70.11(4m)(a) has the burden of showing a benefit to the functioning of the hospital, but no burden of showing that the benefit is not otherwise available.

¶ 17. The seminal case on this topic is *Columbia Hospital*. In *Columbia Hospital*, the supreme court reviewed several residential properties owned by a hospital and occupied by various hospital employees at low rental rates. The occupying employees included the director of building services, the director of nurses, an electronic technician, interns, and resident doctors. *Columbia Hospital*, 35 Wis. 2d at 664, 665–66. With respect to the residences of each of these employees, the supreme court concluded that the property's use was "reasonably necessary" to the functioning of a large modern hospital and, therefore, the property was tax exempt under WIS. STAT. § 70.11(4m).[4] *Columbia Hospital*, 35 Wis. 2d at 672–74.

¶ 18. Pertinent to our "alternatives" issue, the supreme court in *Columbia Hospital* did not address what would happen if the hospital did not provide housing to its employees. That is, the court did not engage in the sort of "alternatives" analysis that the

---

[4] The statute addressed in *Columbia Hospital Ass'n v. City of Milwaukee*, 35 Wis. 2d 660, 151 N.W.2d 750 (1967), WIS. STAT. § 70.11(4m) (1965), varies in some respects from the current version. However, the pertinent language for purposes of our analysis, "used exclusively for the purposes of," remains unchanged.

City of Marshfield argues is required in this case. For example, the *Columbia Hospital* court concluded that the hospital benefited by having its director of nursing live in a residence near the hospital because she was responsible for all nursing activities and she was frequently called to the hospital during her off-duty hours. *Id.* at 666, 673. The court did not, however, address whether other affordable housing was available near the hospital. Under the analysis promoted by the City here, the absence of information in *Columbia Hospital* about alternatives should have been fatal to the hospital's quest for property tax-exempt status for the residence occupied by the director of nursing. Obviously, it was not.

¶ 19. Before this court, the City does not develop the legal basis for its "alternatives" argument. However, before the circuit court the City relied on the following language from *Columbia Hospital*:

> Providing convenient and inexpensive housing is an important part of the recruitment of interns and residents, who *have difficulty finding suitable living quarters* because generally theirs is a short-time need and they are not "on the spot" to view the living facilities.

*Id.* at 673 (emphasis added). Viewed in isolation, the statement that interns and residents "have difficulty finding suitable living quarters" might suggest that the *Columbia Hospital* court reviewed evidence of alternative living arrangements for interns and residents. But nothing in *Columbia Hospital* suggests there was evidence or fact finding as to what would have occurred if the hospital did not provide low cost housing to interns and residents; that is, there is no indication whether other suitable, convenient, and inexpensive housing was available. Instead, the benefits analysis used in

*Columbia Hospital* only involves a review of evidence indicating that the hospital benefited in various ways from having some employees live in housing owned and controlled by the hospital.

¶ 20. Similarly, in *Sisters of St. Mary*, 89 Wis. 2d 372, the supreme court concluded, without discussing alternatives, that a hospital-owned residence, located near the hospital and occupied by the hospital's chaplain, qualified for an exemption under WIS. STAT. § 70.11(4m). *Sisters of St. Mary*, 89 Wis. 2d at 382–84. The supreme court concluded that the Chaplain's residence qualified for tax-exempt status because it was reasonably necessary for the hospital to have a chaplain located near the hospital to "perform emergency religious services for patients." *Id.* at 383. The court explained that the "social, emotional and spiritual dimensions of patient care are indeed important to the patient's well-being" and "[c]aring for these non-physical needs of patients is a legitimate purpose of a modern hospital." *Id.* Nowhere did the *Sisters of St. Mary* court discuss what would happen if the hospital did not provide a residence for its chaplain. Was comparable alternative housing available nearby? Would the Chaplain's religious organization provide a home nearby? Did the hospital pay the Chaplain a sufficient salary to pay for his own home nearby? There is no indication in *Sisters of St. Mary* that such questions were asked. Here again, the supreme court did not engage in the type of "alternatives" analysis advanced by the City in this case.

¶ 21. Finally, we observe that in *Columbia Hospital* the supreme court cited with approval several cases from other jurisdictions where courts, without any dis-

cussion of alternatives, addressed whether hospital property was tax exempt.[5]

¶ 22. The lack of a discussion of alternatives in *Columbia Hospital* and *Sisters of St. Mary* leads us to conclude that our supreme court has determined that when a hospital seeks tax-exempt status for a property under WIS. STAT. § 70.11(4m)(a), the hospital does not have the burden of showing what would happen if the hospital did not use its property to provide the benefit in question. We construe the case law in this area as being more favorable to the potential taxpayer, that is, non-profit hospitals, than it is with respect to other exemptions. In *Columbia Hospital*, the supreme court explained: "Sec. 70.11(4m) was created in 1957 solely to apply to hospitals and its language is much broader than that used in the older exemption statutes applicable to charitable and benevolent institutions." *Columbia Hospital*, 35 Wis. 2d at 669. Similarly, our discussion in *UW Medical Foundation* indicates that the "reason-

---

[5] Specifically, we are referring to the following cases cited in *Columbia Hospital*: *Arnold College v. Town of Milford*, 128 A.2d 537 (Conn. 1957); *Yale Univ. v. Town of New Haven*, 42 A. 87 (Conn. 1899); *Maxwell v. Good Samaritan Hosp. Ass'n*, 161 So. 2d 31 (Fla. Dist. Ct. App. 1964); *Oakwood Hosp. Corp. v. Michigan State Tax Comm'n*, 132 N.W.2d 634 (Mich. 1965); *State v. Fairview Hosp. Ass'n*, 114 N.W.2d 568 (Minn. 1962); *Midwest Bible & Missionary Inst. v. Sestric*, 260 S.W.2d 25 (Mo. 1953); *People ex rel. Clarkson Mem'l College v. Haggett*, 77 N.Y.S.2d 182 (1948); *Doctors Hosp. v. Board of Tax Appeals*, 181 N.E.2d 702 (Ohio 1962); *Aultman Hosp. Ass'n v. Evatt*, 42 N.E.2d 646 (Ohio 1942); *Multnomah School of the Bible v. Multnomah County*, 343 P.2d 893 (Or. 1959); *Carter v. Patterson*, 39 S.W. 1110 (Tex. Civ. App. 1897); *Parker v. Quinn*, 64 P. 961 (Utah 1901).

ably necessary" test is both more favorable and unique to § 70.11(4m)(a). In *UW Medical Foundation*, the Foundation, which was seeking tax-exempt status under different subsections of § 70.11, sought the advantage of the favorable "reasonably necessary" test of subsection (4m), but we held that this test has "no relevance to subsections other than (4m)." *UW Medical Foundation*, 267 Wis. 2d 504, ¶ 17.

¶ 23. Having concluded that evidence of services provided by alternative child care facilities is not relevant to our analysis under the "reasonably necessary" test, we turn our attention to whether, regardless of other facilities, the disputed 98% of the child care center is reasonably necessary to the efficient functioning of the Hospital.

*Whether the Child Care Center is*
*"Reasonably Necessary" to the Hospital*

■

¶ 24. The Hospital has the burden of establishing that its child care center is entitled to a property tax exemption. *See Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 80, 591 N.W.2d 583 (1999) ("[T]he party seeking the exemption bears the burden of proving that it falls within a statutory exemption."). Thus, the Hospital is entitled to summary judgment only if, based on the undisputed facts, it is entitled to the property tax exemption it seeks for its child care center.

¶ 25. The Hospital's principal purposes and primary activities are the diagnosis, treatment, and care of the sick, injured, or disabled. Under the "reasonably necessary" test used to determine whether hospital property is tax exempt under Wis. Stat. § 70.11(4m)(a), the question here is whether the child care center is

reasonably necessary to the efficient functioning of the hospital as an organization in light of these purposes and activities. *See Columbia Hospital*, 35 Wis. 2d at 670-71.

¶ 26. The parties address the property tax exemption issue by distinguishing three groups served by the child care center: Hospital employees, Marshfield Clinic employees, and the employees of the company hired by the Hospital to run the center, that is, Bright Horizons employees. We agree that these three groups merit separate attention, and address them below.

¶ 27. We pause here to comment on two assumptions the parties make, but do not discuss, relating to partial exemptions: (1) the propriety of a partial exemption for the Hospital property, and (2) the method used to calculate that partial exemption under various scenarios.

¶ 28. First, the parties assume that the Hospital is eligible for a partial exemption for some portion of the child care center, if only a portion is attributable to a use that is tax exempt under WIS. STAT. § 70.11(4m)(a).[6] However, the only authority discussed by the parties for a partial exemption is WIS. STAT. § 70.1105, and their discussion of that statute is cursory.[7] Neither party

---

[6] For that matter, the City agrees that the Hospital is entitled to a 2% partial exemption because the center's "Healthy Birth Program" is property tax exempt. The record indicates that this exemption is based on the exemption for benevolent institutions, WIS. STAT. § 70.11(4), because the "Healthy Birth Program" is open to the community and supported by the United Way, a benevolent non-profit agency. To repeat, this partial exemption is not disputed, and we do not address it.

[7] WISCONSIN STAT. § 70.1105 reads:

Taxed in part. (1) Property that is exempt under s. 70.11 and that is used in part in a trade or business for which the owner of

---

suggests that § 70.1105 has direct application to the facts in this case. More importantly, neither party provides a developed argument as to why a partial exemption is permitted. In the absence of developed argument, we will assume, without deciding, that a partial exemption is appropriate under § 70.11(4m)(a) when only a portion of the use of a hospital's property is attributable to a use that qualifies under that statute.

¶ 29. Second, the parties apparently assume that the proper method for allocating the percentages of the property which are taxable and tax exempt directly correlate to the percentages of children in the three groups: children of Hospital employees, children of Marshfield Clinic employees, and children of Bright Horizons employees. That is, the parties assume that if 49% of the full-time equivalent slots at the center are filled with the children of Hospital employees, then 49% of the property is either taxable or tax exempt, depending on whether we conclude that use by such children benefits the Hospital within the meaning of WIS. STAT. § 70.11(4m)(a). However, the validity of this allocation method is not apparent. For example, suppose it is

the property is subject to taxation under sections 511 to 515 of the internal revenue code, as defined in s. 71.22(4m), shall be assessed for taxation at that portion of the fair market value of the property that is attributable to the part of the property that is used in the unrelated trade or business. This section does not apply to property that is leased by an exempt organization to another person or to property that is exempt under s. 70.11(34).

(2) Property, excluding land, that is owned or leased by a corporation that provides services pursuant to 15 USC § 79 to a light, heat, and power company, as defined under s. 76.28(1)(e), that is subject to taxation under s. 76.28 and that is affiliated with the corporation shall be assessed for taxation at the portion of the fair market value of the property that is not used to provide such services.

ultimately determined that 10% of the spaces are filled by children of Clinic employees who do not benefit the Hospital within the meaning of § 70.11(4m)(a). Does that mean that a full 10% of the value of the facility is taxable? Would the facility be 10% smaller or 10% less valuable if it had been constructed to serve 10% fewer children? In the absence of briefing on the topic, we assume, but do not decide, that the percentages of children correlate directly to the percentages of the child care center property that is taxable or tax exempt.[8]

¶ 30. Having clarified that these are undisputed assumptions, not holdings of this court, we turn to the three groups of employees discussed by the parties.

### 1. Hospital Employees

¶ 31. Our review of the parties' arguments discloses that the dispute between the Hospital and the City with respect to Hospital employees focuses on comparisons between the Hospital's child care center

---

[8] We question whether the partial property tax exemption approach that flows from assumptions made by the parties is practical with respect to these parties or as a general rule. As will be obvious from our later discussions, there is the difficulty in factually assessing contributions to a hospital by non-hospital employees—either individually or by job type—and applying the "reasonably necessary" test to these individuals or job types. There is also the question of timing: What time period should be used to establish the percentage of a property attributable to a tax-exempt use? This opinion expressly and implicitly raises several other questions. However, in light of the limitations imposed by the posture of this case, the statutes, the supreme court case law, and the absence of briefing on certain issues, we do not discern a more practical solution.

and nearby alternative facilities. The City contends that the benefits to the Hospital are insufficient under the "reasonably necessary" test because the same benefits would flow from "equivalent day care facilities located near the Hospital." However, as explained above, the proper analysis does not involve comparing the Hospital's child care center to other nearby facilities available to Hospital employees. Rather, we consider whether the child care center is reasonably necessary to the efficient functioning of the Hospital as an organization without comparing the child care center with alternative nearby facilities.

¶ 32. We conclude, in light of undisputed facts, that the benefit to the Hospital is sufficient under the "reasonably necessary" test. In *Columbia Hospital* and *Sisters of St. Mary*, the hospitals benefited by having staff residences located near the hospitals, thereby facilitating the service those employees provided to the hospitals. In *Columbia Hospital*, the hospital used housing for resident doctors as a recruiting tool. Similarly, the child care center in this case enhances both employee performance and the ability of the Hospital to attract quality personnel. Our review of the record reveals the following undisputed evidence:

- The Hospital's child care center is located near Hospital and Clinic employee parking and is located across a main thoroughfare from the Hospital complex. A map in the record shows that the child care center is at most a few minutes walk from the Hospital and Clinic.

- The Hospital child care center is licensed and equipped to provide "sick child" care, thereby reducing employee absenteeism.

- Having a hospital-owned-and-operated child

593

care center is used by the Hospital as a recruiting tool. The child care center is featured in Hospital recruiting materials. Approximately 60% of similarly sized hospitals offer some form of child care to employees. Several employees have told Hospital administrators that the child care center contributed to their decision to accept employment at the Hospital. The child care center has a waiting list of Hospital and Clinic employees.[9]

- The child care center is open from 5:45 a.m. to 9:00 p.m. weekdays, a time period Hospital officials have determined meets the needs of most Hospital employees and accommodates certain employees with twelve-hour or rotating shifts.

- The child care center accommodates children from the age of 6 weeks to 13 years.

- The Hospital's child care center accommodates last-minute schedule changes. The Hospital, as owner of the child care center, has the ability to change the procedures and hours of operation to meet any changing needs of Hospital employees.

- According to a Hospital administrator, the child care center, with its features such as location,

---

[9] To the extent the City disputes the value of the child care center as a recruiting tool, its argument focuses on whether new hospital employees could find comparable alternative child care. But the City does not dispute the fact that the Hospital uses the child care center as a recruiting tool or that the Hospital is able to present evidence showing that some employees chose to work at the Hospital in part because of the child care center. The City does not argue in its appellate brief that this evidence or any other evidence listed above is inadmissible.

flexible scheduling, and "sick child" care, reduces
employee absenteeism and tardiness.

¶ 33. The City does not explain why these fea-
tures of the child care center do not benefit the func-
tioning of the Hospital. Instead, the City complains that
the Hospital has failed to "specifically demonstrate . . .
how the use of the Day Care Center by . . . specific
employees . . . furthers the Hospital's ability to provide
health care services." But this employee-by-employee
argument lacks merit. First, the majority of Hospital
employees using the child care center, such as nurses
and therapists, are directly involved in providing pa-
tient care. Moreover, Hospital "support" personnel—
such as cooks, computer technicians, and laundry
workers—obviously add to the efficient functioning of
the Hospital. It follows that convenient child care that
reduces tardiness and absenteeism in this group also
benefits the efficient functioning of the Hospital as an
organization.

¶ 34. Accordingly, we reverse the circuit court's
grant of summary judgment with respect to that por-
tion of the Hospital's child care center property attrib-
utable to Hospital employee use. With respect to this
group, we direct entry of summary judgment in favor of
the Hospital, as further explained below.

*2. Marshfield Clinic Employees*

¶ 35. Perhaps because the parties focused their
attention on comparisons between the Hospital's child
care center and alternative facilities, scant briefing was
devoted to Marshfield Clinic employees as a distinct
group of child care center users. The City asserts, and
the Hospital implicitly concedes, that a property tax
exemption for the portion of the center attributable to

Clinic employee use must be justified based on whether the Clinic employees contribute to the efficient functioning of the Hospital as an organization.[10] We agree. Although cumbersome, if the partial exemption approach assumed by the parties is permissible, then case law interpreting WIS. STAT. § 70.11(4m)(a) clearly directs that the use of the portion of the property in question must satisfy the "reasonably necessary" test. *See Columbia Hospital*, 35 Wis. 2d at 670–71. If, for example, none of the Clinic employees using the child care center contribute to the functioning of the Hospital, then there is no reason to extend property tax-exempt status to the portion of the child care center attributable to serving the children of those employees. Thus, we direct our attention to the parties' arguments regarding Marshfield Clinic employees.

---

[10] The Hospital nominally disagrees with the City's assertion that an employee-by-employee approach is appropriate with respect to Marshfield Clinic employees, but we think the Hospital's argument, taken as a whole, amounts to a concession that such an approach is proper. The Hospital does argue that it need not provide the sort of specific evidence required in *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 591 N.W.2d 583 (1999). However, the dispute over the applicability of *Deutsches Land* is beside the point. The Hospital's proffered justification—for extending tax-exempt status to that portion of the child care center relating to Marshfield Clinic employees—is that the Clinic employees "provide health care services to Hospital patients . . . [or] indirectly provide services or support to Hospital patients." Because this is the Hospital's justification, it follows that it does matter what portion of the Clinic employees using the center provide direct or indirect services to Hospital patients. The Hospital does not explain how this portion can be determined without an analysis of the duties of particular employees or categories of employees.

¶ 36. With no more detail than we summarize here, the Hospital argues that use of its child care center by all Clinic employees is "reasonably necessary to [the Hospital's] exempt purpose." The Hospital asserts that its medical staff consists principally of Marshfield Clinic physicians and that other Clinic employees "provide health care services to Hospital patients through contract-for-service and lease arrangements, . . . [or] indirectly provide services or support to Hospital patients." The Hospital asserts that the "availability of child care is a factor in the decision-making of many Clinic employees, just as it is with Hospital employees."[11] The Hospital does not, however, point to undisputed facts showing that all of the Clinic employees directly or indirectly provide diagnosis, treatment, or care to Hospital patients.

¶ 37. We quote the City's argument with respect to Marshfield Clinic employees in its entirety:

> While the Hospital has made some effort to identify, but only by job title, those Clinic employees who utilize the Day Care Center (R.13:Exhibit D; R-Ap.38a-38b), this is still insufficient proof under *Deutsches Land*. The Hospital has offered nothing to specifically demonstrate how the use of the Hospital's Day Care Center by *these particular Clinic employees* furthers the Hospital's ability to deliver health care to its patients other than

---

[11] We observe that Marshfield Clinic's own property tax exemption status under Wis. Stat. § 70.11(25) is irrelevant to our discussion. The Hospital does not argue that it is entitled to a tax exemption because of the Clinic's tax status. Moreover, the "reasonably necessary" test has no relevance to § 70.11(25). *University of Wisconsin Medical Foundation, Inc. v. City of Madison*, 2003 WI App 204, ¶¶ 16–17, 34, 267 Wis. 2d 504, 671 N.W.2d 292, *review denied*, 2004 WI 20, 269 Wis. 2d 198, 675 N.W.2d 804 (Jan. 23, 2004) (No. 02–1473).

"merely unsupported opinion testimony" with no "documented . . . supporting evidence." (*Id.,* 225 Wis. 2d at 98–99.)

¶ 38. These arguments raise more questions than they answer. Does the City really mean to argue that Clinic physicians who staff the Hospital do not, in the words of the City, "further[] the Hospital's ability to deliver health care to its patients"? If so, we disagree. The record indicates that about 54 of 227 Clinic employee children served by the center are the children of Clinic physicians. It is undisputed that physicians are vital to patient care at the Hospital. We conclude that if all of these 54 children are children of physicians who staff the Hospital, then this partial use of the child care center satisfies Wis. Stat. § 70.11(4m)(a).[12]

¶ 39. We also note that the City has stipulated that other Marshfield Clinic health care workers provide services to Hospital patients. The stipulation of facts presented to the circuit court by the parties states:

Marshfield Clinic also employs other healthcare workers who provide health care services to Hospital patients through contract-for-service and lease arrangements, such as anesthesiologist technicians, electroneurodiagnostic technicians, radiology technicians, pump technicians, CT technicians, ultrasonographers, and certified registered nurse anesthetists ("CRNAs"). Other Marsh-

---

[12] We are uncertain if all of the Marshfield Clinic physicians staff the Hospital. It may be that some of the physicians—listed on Exhibit D attached to the parties' stipulation—do not staff the Hospital. Obviously, if a physician does not staff the Hospital or is not otherwise "reasonably necessary" to the Hospital, there is no basis for a tax exemption under Wis. Stat. § 70.11(4m)(a) for that portion of the child care center attributable to caring for such physician's children.

598

field Clinic employees indirectly provide services or support to Hospital patients, including lab employees who work in the joint lab, human resource personnel who recruit the physicians, medical transcriptionists who prepare the physicians' dictation for the joint medical record, as well as radiology clerks, blood bank specialists and research scientists.

Attached to the stipulation is an employee listing, by job title, that plainly includes several of the categories of employees identified in the above stipulation language. Is the City now contending that these employees do not "further[] the Hospital's ability to deliver health care to its patients"?

¶ 40. At the same time, we are uncertain what the Hospital is arguing. Is the Hospital arguing that all listed Clinic employees provide direct or indirect services supporting Hospital patients? The list of Clinic employees with children at the center shows that several have job titles with no apparent connection to the Hospital, such as "Claims Approver," "Legal Assistant," and "Supply Clerk."

¶ 41. Based on the record and the arguments before us, we cannot determine what portion of the child care center property is attributable to use by the children of Marshfield Clinic employees who are "reasonably necessary" to the efficient functioning of the Hospital. Therefore, we remand for further proceedings on this topic. Because we have already concluded that the child care center reduces tardiness and absenteeism and enhances recruitment, on remand the Hospital has the burden of showing what percentage of the children in the center are children of Marshfield Clinic employ-

ees who directly or indirectly provide diagnosis, treatment, or care to Hospital patients.[13]

¶ 42. We readily acknowledge that this approach is burdensome inasmuch as it requires an employee-by-employee or a job-by-job analysis. Moreover, it would appear to be an approach that leads to percentages that change from year to year. We are also aware that the "reasonably necessary" analysis we direct the circuit court to apply to Clinic employees lacks clarity. In particular, there may be a dispute on remand as to the meaning of "indirectly providing diagnosis, treatment, or care" to hospital patients. How might a Clinic employee indirectly provide such services and still be considered reasonably necessary to the efficient func-

---

[13] The City contends that this analysis must be conducted with respect to the use of the child care center on January 1, 2000, and January 1, 2001. However, we agree with the Hospital that the authority the City relies on, *Family Hospital Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 254 N.W.2d 268 (1977), and *Friendship Village of Greater Milwaukee, Inc. v. City of Milwaukee*, 181 Wis. 2d 207, 511 N.W.2d 345 (Ct. App. 1993), falls short of stating this proposition. But we find the Hospital's argument no more persuasive. The Hospital asserts that assessments need not be tied to any particular date, but the Hospital does not provide a workable alternative. The Hospital notes that neither *Columbia Hospital* nor *Sisters of St. Mary* involves evidence tied to a specific assessment date, but neither of those cases involved calculating partial tax-exempt status. The Hospital points out that in *Deutsches Land* the supreme court looked at the percentage of time a facility was used over the course of the disputed tax year. *Deutsches Land*, 225 Wis. 2d at 86–87. That may be true, but there is no indication in *Deutsches Land* that either party raised this issue. We decline to address the issue because we find the briefing inadequate. On remand, we invite the circuit court's and the parties' attention to Wis. Stat. § 70.10 and the introductory portion of § 70.11, which may shed some light on this topic.

tioning of the Hospital as an organization? However, this lack of clarity flows from the posture of this case. The parties here have not addressed the meaning of Wis. Stat. § 70.11(4m)(a) with respect to particular Clinic employees or job categories. That is, we have not been asked to interpret and apply the statute to particular Clinic employees knowing specifically what the employee does or what portion of his or her time is spent on Hospital-related activities. Unlike Hospital employees, who we can safely assume spend substantially all of their work time contributing to the mission of the Hospital, we know little of the activities of the Clinic employees. Thus, we have no opportunity in the context of this appeal to interpret § 70.11(4m)(a) with respect to specific Clinic employee situations.

### 3. Bright Horizons Employees

¶ 43. Bright Horizons is a for-profit company employed by the Hospital to manage its child care center. Sixteen full-time spaces, or about 5% of the total full-time spaces, are reserved for the children of Bright Horizons employees. The Hospital argues that the spaces allocated to Bright Horizons employees benefit the Hospital because it "reduces absenteeism by Bright Horizons' employees, thereby enhancing the care provided to children of Hospital employees." In the alternative, the Hospital argues that the number of spots set aside for Bright Horizons employees is *de minimis*.

¶ 44. The City responds that although it may be convenient for Bright Horizons employees to have their children at the facility where they work, such convenience does not assist the Hospital in providing care to

601

its patients. The City also argues that 5% of property assessed at about three million dollars is not *de minimis.*

¶ 45. As posed by the parties, the narrow question presented is whether the set-aside for the children of the private company's employees constitutes a tax-exempt use of the facility within the meaning of WIS. STAT. § 70.11(4m)(a) when that facility is otherwise tax exempt under the statute because it serves Hospital employees. We conclude that the use of the child care center for the employees of Bright Horizons is no different in terms of benefit to the Hospital than if the Hospital used its own employees to staff the center and offered the same set-aside spaces to Hospital-employed child care workers. In either case, the provision of child care to children of child care workers contributes to a well-run child care center, both in terms of recruiting child care workers and in reducing their absenteeism. This, in turn, directly benefits the Hospital employees and, ultimately, the Hospital itself.

¶ 46. But this does not resolve the matter. As explained above, we are remanding for a determination of the percentage of children using the center who are the children of Clinic employees who directly or indirectly provide diagnosis, treatment, or care to Hospital patients. The resolution of that issue will, in turn, affect the analysis regarding Bright Horizons employees. Some portion of spaces used by the children of Bright Horizons child care workers may not be reasonably necessary to the efficient functioning of the Hospital as an organization because these spaces relate to Bright Horizons workers attributable to Clinic employees who do not directly or indirectly provide diagnosis, treatment, or care to Hospital patients.

¶ 47. Furthermore, if this puzzle is solved on remand, the circuit court may have to address the parties' dispute that the percentage is *de minimis*. Assuming, for the sake of argument, that partial exemptions are permitted and that the proper allocation method involves allocating the percentages of the property which are taxable and tax exempt in direct proportion to qualifying percentages of children in the three groups,[14] we agree with the City that 5% of an assessed value of about three million dollars is not *de minimis*. But we know the percentage will be something less than 5% because we already know that a substantial percentage of Bright Horizons child care workers are attributable to Hospital employees and Clinic employees who directly or indirectly provide diagnosis, treatment, or care to Hospital patients. The Hospital states that in *Deutsches Land* the supreme court suggested that 1% commercial use of property is *de minimis*. This is nearly accurate. In *Deutsches Land*, the supreme court pointed with approval to a prior case in which less than 1% non-conforming use was *de minimis*. *Deutsches Land*, 225 Wis. 2d at 83. As the Hospital accurately points out, the *Deutsches Land* court also indicated that 10% is not *de minimis*. *Id.* at 84. Where the line falls in between is a question to be decided on a case-by-case basis. The *Deutsches Land* court concluded:

> In general, the relevant question is this: How consequential was the questionable activity when compared to the total activity on the property? This fact-specific question can only be answered on a case-by-case basis.

---

[14] *See* paragraphs 28 and 29, above.

*Id.* (citations omitted).[15]

¶ 48. Accordingly, neither party is entitled to summary judgment with respect to Bright Horizons employees, and we remand on that topic.

### *Conclusion*

¶ 49. We have concluded that the portion of the Hospital's child care center attributable to Hospital employees is tax exempt under WIS. STAT. § 70.11(4m)(a). We interpret the parties' stipulation of facts and briefs as showing that it is undisputed that 49% of the Hospital's child care center is attributable to Hospital employees.

¶ 50. We have also concluded, with respect to the spaces filled by the children of Marshfield Clinic employees, that factual and perhaps legal disputes remain over which of the Clinic employees satisfy the "reasonably necessary" test. We have concluded that use of the center by the children of Clinic physicians who staff the hospital satisfies the "reasonably necessary" test. However, we cannot tell from the record and the arguments before us whether use by the children of other Clinic employees meets this test. In this regard, the circuit court need not start from scratch. We have concluded that the child care center reduces tardiness and absenteeism and enhances recruitment. This part of our reasoning applies equally to Hospital and Clinic em-

---

[15] The City implicitly argues that the value of the property is a factor to consider when deciding whether a non-conforming use is *de minimis*. The City apparently takes the position that the higher the property value, the more likely a small percentage of non-conforming use will not be ignored as *de minimis*. This argument merits consideration, but we have no reason to address it.

ployees. On remand, it remains to be determined what percentage of the children in the center are children of Clinic employees who directly or indirectly provide diagnosis, treatment, or care to Hospital patients.

¶ 51. Finally, we have concluded that a dispute remains with respect to Bright Horizons employees. As we explain above, the resolution of that issue is intertwined with the resolution of the Clinic employees issue. The guidance we are able to give on this topic is contained in paragraphs 45 to 48, above. Also, although it may be clear to the parties and the circuit court, it is not apparent to this court how it is that the children of Bright Horizons employees comprise 5% of the use of the child care center when use by others seemingly totals 100%. We previously commented on this topic in footnote 2.

*By the Court.*—Judgment reversed and cause remanded with directions.